## NATIONAL TREASURY EMPLOYEES UNION, Petitioner,

v.

## FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 85-3393.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1986.

Decided Sept. 25, 1986.

Lois G. Williams, Director of Litigation, Nat. Treasury Employees Union, Washington, D.C., Gregory O'Duden, argued, for petitioner.

Jill A. Griffin, argued, Washington, D.C., for respondent.

Before MARTIN, KRUPANSKY and GUY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case arises under the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101 *et seq.*, which governs labor relations in the federal government. The National Treasury Employees Union and the U.S. Customs Service were parties to a national collective bargaining agreement in effect from June 30, 1980, through June 30, 1982. Since at least 1975, Customs Inspectors at the Detroit Metro Airport had worked a 9:00 a.m. to 5:00 p.m. shift with no scheduled lunch break. On September 15, 1982, the Service proposed that the shift be changed to a 9:00 a.m. to 6:00 p.m. day with a one hour non-paid meal break. The Union requested that the Service negotiate the change. After negotiations, the parties agreed that the non-paid meal period would be thirty minutes. The Service refused to negotiate the starting and quitting times of the shift, however, and unilaterally imposed a 9:30 a.m. to 6:00 p.m. shift. The Union requested an 8:30 a.m. to 5:00 p.m. shift. Concerning the significance of the Services action, the parties stipulated:

The change in the tour of duty for the Customs Inspectors ... at the Metro Air-

port substantially impacted on the working conditions of bargaining unit employees as the previous overtime hours were from 5:00 p.m. to 8:00 a.m. and employees would be paid overtime for work after 5:00 p.m. As a result of the change, employees receive overtime pay for work after 6:00 p.m.

The National Treasury Employees Union filed an unfair labor practice charge with the Federal Labor Relations Authority on November 8, 1982. The Union claimed that the U.S. Customs Service violated 5 U.S.C. § 7116(a)(1), (5) of the Federal Service Labor-Management Relations Statute when it unilaterally implemented the change in the hours of work of Customs Inspectors at Detroit's airport. On March 18, 1985, the Authority issued its decision that the Customs Service had violated the statute. *Dep't of the Treasury, U.S. Customs Service and Nat'l Treasury Employees Union*, 17 F.L.R.A. No. 33 (1985). To remedy the violations, the Authority issued a prospective bargaining order. The Union has appealed the Authority's denial of its request to award backpay to employees allegedly deprived of overtime compensation because of the Customs Service's unlawful conduct.

Where, as in this case, the Authority finds an unfair labor practice has been committed, it is empowered to issue an order:

(A) to cease and desist from any such unfair labor practice ...;

(B) requiring the parties to renegotiate a collective bargaining agreement ... and requiring that the agreement, as amended, be given retroactive effect;

(C) requiring reinstatement of an employee with backpay in accordance with section 5596 of [Title 5 U.S.C.]; or

(D) including any combination of the actions described in subparagraphs (A) through (C) ... or such other action as will carry out the purpose of this chapter.

5 U.S.C. § 7118(a)(7).

In the instant case, the Authority issued a cease and desist order prohibiting Customs from "instituting any change in the starting and quitting times of Customs Inspectors at the Metro Airport Detroit District...." *See id.* at § 7118(a)(7)(A). It did not, however, require the parties to "renegotiate a collective bargaining agreement," *see id.* at § 7118(a)(7)(B), because the parties on their own had already bargained and reached agreement over new shift hours which had been put into effect.

The Union contends that under section 7118(a)(7)(C) a backpay order should have been entered. It is not all clear that this section is even applicable here since it clearly speaks in terms of awarding backpay to employees who have been ordered *reinstated.* Since no reinstatements are involved here, the applicability of this section is questionable; perhaps an interpretation of section 7118(a)(7)(C) limiting its application to reinstated employees would be more appropriate. However, there is no doubt that the Authority can, under the catch-all provisions of section 7118(a)(7)(D), or under its "retroactive effect" power of section 7118(a)(7)(B), issue a status quo ante order which would include payment of backpay. Moreover, the Back Pay Act, 5 U.S.C. § 5596, referenced in section 7118(a)(7)(C) is not limited to situations involving only reinstatements.

Concerning the Union's request for backpay, the Authority stated that "without any specificity, the Union has requested that backpay be given 'to all affected inspectional personnel in the amount they would have earned in overtime pay between the hours of 5:00 p.m. and 6:00 p.m. had this violation not occurred....' " The Authority rejected this request:

[T]he Authority finds ... that it has not been established that but for the Respondent's improper refusal to bargain over the starting and quitting times, employees would have received overtime pay.* Under these circumstances, the Authority concludes that a backpay order is not warranted.

*See, Federal Aviation Administration, Northwest Mountain Region,* [14 F.L.R.A. 644 (1984)], and cases cited therein.

The Union appeals this determination, pursuant to 5 U.S.C. § 7123.

The standard of review of Authority orders is narrow. *United States Air Force v. Federal Labor Relations Authority*, 681 F.2d 466, 467 (6th Cir.1982). Section 7123(c) of the Act requires that review of Authority orders is to be on the record in accordance with the Administrative Procedure Act, 5 U.S.C. § 706. In discussing such review in the context of the Interstate Commerce Commission, this Court has stated:

> A decision of the Commission should not be set aside on judicial review unless it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A) & (E); *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975); *Coastal Tank Lines, Inc. v. Interstate Commerce Commission*, 690 F.2d 537, 542–43 (6th Cir.1982). If the agency considers the relevant factors and articulates a rational connection between the facts found and the choice made, the decision is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and will be upheld if supported by substantial evidence. *Bowman Transportation, Inc., supra,* 419 U.S. at 285, 95 S.Ct. at 441; *O–J Transport Co. v. United States*, 536 F.2d 126, 129–30 (6th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976).

*Film Transit, Inc. v. I.C.C.*, 699 F.2d 298, 300 (6th Cir.1983). This Court has noted that the Administrative Procedure Act

> does not require an agency to furnish detailed reasons for its decisions so long as its conclusions and underlying reasons may be discerned with confidence. *Lemmon Transport Co., Inc. v. United States*, 393 F.Supp. 838, 841 (W.D.Va. 1975). Stated another way, the Commission's decision must be sufficiently clear so that a court is not required to spec-

ulate as to its basis. *Ross Express, Inc. v. United States*, 529 F.2d 679, 682 (1st Cir.1976).

*O–J Transport Co. v. United States*, 536 F.2d 126, 130 (6th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976).

In this case, the Authority denied the Union's backpay request with the terse explanation that it had not been demonstrated that "but for the Respondent's improper refusal to bargain over the starting and quitting times, employees would have received overtime pay." On appeal, the Union and the Authority have disagreed concerning the reasoning of the Authority's decision and order. This Court has reviewed the decision and order and has concluded that the Authority has not clearly articulated its rationale. We are unable to accept this extremely brief explanation as adequate in light of the parties' stipulation concerning the substantial impact that the change in hours had on the employees' working conditions. The Authority regularly resolves disputes that require subsequent proceedings to work out the details of its orders. To suggest, as is implied here, that the Union should have come forward with the names of specific employees and the amount of their lost wages is neither practical nor in keeping with Authority practice.

This Court cannot speculate concerning the Authority's basis for decision. Rather than reverse the Authority and order backpay, however, we remand the decision and order to the Authority for a more complete consideration of the appropriateness of a status quo ante order. The when, why, and how the hours change was effectuated must be considered, mindful that the statutes "should be interpreted in a manner consistent with the requirement of an effective and efficient Government." 5 U.S.C. § 7101(b). The Authority must then articulate more fully its reasons for granting or denying the order of backpay.