855 F.2d 936
 129 L.R.R.M. (BNA) 2291, 48 Ed. Law Rep. 1145
 WEST POINT ELEMENTARY SCHOOL TEACHERS ASSOCIATION,
Petitioner Cross-Respondent,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent Cross-Petitioner.
UNITED STATES MILITARY ACADEMY ELEMENTARY SCHOOL, WEST
POINT, NEW YORK, Petitioner Cross-Respondent,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent Cross-Petitioner,
West Point Elementary School Teachers Association, Intervenor.
 Nos. 861, 1097, 1185, Docket 87-4149, 88-4007 and 88-4051.
 United States Court of Appeals,
Second Circuit.
 Argued April 11, 1988.
Decided Aug. 24, 1988.
 
 Richard J. Hirn, Washington, D.C. (Deborah Watarz, Schilian, La Penta, Watarz & Gulmi, New York City of counsel) for petitioner cross-respondent intervenor West Point Elementary School Teachers Ass'n.
 Marc Richman, Attorney, Appellate Staff Civ. Div. (Richard K. Willard, Asst. Atty. Gen., William Kanter, Attorney, Appellate Staff Civ. Div., Dept. of Justice; William Trivette, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., of counsel) for petitioner cross-respondent U.S. Military Academy Elementary School.
 Jill A. Griffin, Attorney (Ruth E. Peters, Solicitor; William E. Persina, Deputy Solicitor; James F. Blandford, Attorney, Federal Labor Relations Authority, Washington, D.C., of counsel) for respondent cross-petitioner Federal Labor Relations Authority.
 Before VAN GRAAFEILAND, NEWMAN and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Petitioner West Point Elementary School Teachers Association (the "Union") seeks review of a decision and order of the Federal Labor Relations Authority ("FLRA"), which held that the Union's proposals to negotiate over the use of personal service contracts, the accommodation of employee preferences in assigning extracurricular duties and the school calendar are not subject to the duty to bargain under the Federal Service Labor Management Relations Act, 5 U.S.C. Sec. 7101 et seq. (1982 & Supp.IV 1986) (the "FSLMRA"). Petitioner United States Military Academy Elementary School (the "Army" or "Agency") seeks review of the same order, insofar as it directs the Army to bargain with the Union over the salary schedule for teachers. The FLRA requests enforcement of its decision and order, and denial of the petitions for review. For the reasons that follow, we grant the FLRA's petition to enforce the order with respect to the salary schedule and school calendar proposals and deny it in all other respects. We grant the Union's petition for review on the personal service contract and employee preference proposals and deny it in all other respects. We deny the Army's petition for review in its entirety.
 
 BACKGROUND
 
 2
 The Union represents a bargaining unit of approximately fifty teachers employed by the Department of the Army, pursuant to Section 6, Title I of Pub.L. No. 81-874 (codified at 20 U.S.C. Sec. 241), at the United States Military Academy Elementary School, West Point, New York (the "school"). The Army operates the school to educate the dependents of military and civilian personnel who live on base at West Point. The Union negotiated collective bargaining agreements with the Army in 1977 and 1982. In 1987, during the course of negotiations for a successor agreement, the Army declared five proposals submitted by the Union to be outside the duty to bargain under the FSLMRA. Four of the proposals are the subject of these consolidated petitions.
 
 
 3
 First, the Union proposed: "Unit employees shall not be requested or required to enter into personal service contracts as a condition of their employment." The Army currently requires teachers to enter into "personal service contracts" in order to be hired. See 32 C.F.R. Sec. 594.5602 (1987). A contract is issued to the teachers once every five years, but must be renewed annually. At the end of five years, teachers are required to reapply for their jobs by submitting a Solicitation, Offer and Award form (SF 33) to the contracting office.
 
 
 4
 Second, the Union proposed that the Army accommodate employee preferences in assigning extracurricular duties:
 
 
 5
 The Employer will make every effort to fill extracurricular positions in accordance with the expressed preferences of the qualified employees in the bargaining unit in the school. In the event the Employer does not fill all available positions in accordance with the preferences of the employees, then the Employer agrees to actively seek qualified volunteers from the bargaining unit at the school.
 
 
 6
 Third, the Union proposed that the establishment of the school calendar be a subject for negotiation. The proposal provides, in pertinent part:
 
 
 7
 a. The Union recognizes that it is the function of the Employer, after negotiating with the Union, to set the school calendar annually.
 
 
 8
 * * *
 
 
 9
 c. By April 1 of each year, the Employer shall present to the Union a proposed calendar for the following school year. The Union may exercise its right to request negotiations with the Employer over the proposed calendar. Such request for calendar negotiations must be submitted to the Employer within fifteen (15) days of the Union's receipt of the proposed calendar. If no request is submitted, the calendar presented by the Employer becomes effective.
 
 
 10
 Finally, the Union proposed that the teachers' salary schedule be subject to negotiation. The salary proposal provides:
 
 
 11
 By April 1 of each year, the Employer shall present to the Union a proposed salary schedule for the following school year. The Union may exercise its right to request negotiations with the Employer over the proposed salary schedule. Such request for salary negotiations must be submitted to the Employer within fifteen (15) days of the Union's receipt of the proposed salary schedule. If no request is submitted, the salary schedule presented by the Employer becomes effective.
 
 
 12
 In response to the Army's written declaration of non-negotiability as to these proposals, the Union filed an appeal with the FLRA, see 5 U.S.C. Sec. 7117(c) (1982). In a decision and order dated November 6, 1987, the FLRA determined that the salary schedule proposal was within the duty to bargain, but the other three proposals were not.
 
 
 13
 The FLRA rejected the Army's contention that the personal service contracts proposal interferes with its right to determine its organization and to hire teachers as independent contractors. However, the FLRA found that "the use of personal services contracts by the Agency [is] inseparable from the decision to hire," Jt.App. at 3, and thus, the proposal "directly interferes" with the Army's right to hire under Sec. 7106(a)(2)(A) of the FSLMRA, id. at 4. Because the proposal "constitutes a substantive rather than a procedural limitation" on the Army's right to hire, the FLRA concluded that the proposal was not negotiable. Id. The FLRA also rejected the Union's argument that the Army's use of personal service contracts was in direct violation of the Federal Acquisitions Regulations, 48 C.F.R. Sec. 37.104, finding that the Union had not adequately demonstrated the unlawfulness of such contracts, Jt.App. at 4.
 
 
 14
 The FLRA found the employee preference proposal to be outside the duty to bargain because it "condition[s] assignment of extracurricular activities on employee preference" and thus "directly interfere[s] with management's right to assign work," id. (citing Overseas Educ. Ass'n v. Department of Defense Dependents Schools, 29 F.L.R.A. (No. 56) 628 (1987)). The FLRA also found the proposal objectionable because it "would permit the substitution of an arbitrator's judgment for that of management concerning whether management made 'every reasonable effort' to fill extracurricular positions in accordance with the preferences of employees." Jt.App. at 5-6.
 
 
 15
 The FLRA also found the proposal over the school calendar to be outside the duty to bargain. The FLRA agreed with the Army that the proposal would interfere with the Army's right to assign work because the proposal would permit the negotiation of holidays and "thus would permit the negotiation of when the assignment of instructional duties would or would not occur," id. at 7. The FLRA therefore rejected the Union's assertion that no interference would occur because the Army retained the right to set the length of the school day or school year and to determine the number of days of instruction. Id. at 6-7.
 
 
 16
 Finally, a majority of the FLRA panel found that the Union's proposal to negotiate the teachers' salary schedule was within the duty to bargain. Citing Fort Stewart (Georgia) Ass'n of Educators & Fort Stewart Schools, 28 F.L.R.A. (No. 67) 547 (1987), and Fort Knox Teachers Ass'n & Fort Knox Dependents Schools, 28 F.L.R.A. (No. 29) 179 (1987), the FLRA rejected the Army's contention that the proposal was "(1) outside the ambit of conditions of employment under the [FSLMRA]; (2) in violation of the Agency's right under section 7106(a)(1) to determine its budget; (3) inconsistent with procurement law and regulations; (4) in conflict with an Agency regulation for which a compelling need exists; and (5) in violation of the Antideficiency Act, 31 U.S.C. Sec. 1341." Jt.App. at 13. The FLRA found that all of those arguments had been made and rejected in both Fort Stewart and Fort Knox, and that the Army raised "no new or different facts or issues here which would support a different outcome." Id. Chairman Calhoun, however, dissented, opining that "in the absence of a clear expression of Congressional intent to make wages and money-related fringe benefits negotiable ... proposals concerning those matters are not within the duty to bargain." Id. at 15.
 
 
 17
 In their petitions, the Union and Army present the same arguments they urged upon the FLRA. The FLRA requests that we uphold its decision and order in all respects, and that we enforce its order directing the Army to bargain over the salary schedule proposal.
 
 DISCUSSION
 Scope of Review
 
 18
 The FLRA is "entitled to considerable deference when it exercises its 'special function of applying the general provisions of the [FSLMRA] to the complexities' of federal labor relations." Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (quoting NLRB v. Erie Resistor Corp., 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963)). "Congress has specifically entrusted the [FLRA] with the responsibility to define the proper subjects for collective bargaining [under the FSLMRA], drawing upon its expertise and understanding of the special needs of the public sector labor relations." Library of Congress v. FLRA, 699 F.2d 1280, 1289 (D.C.Cir.1983). When the FLRA exercises such special functions, its decisions and orders should not be set aside unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. Sec. 706(2); see New York Council Ass'n v. FLRA, 757 F.2d 502, 507 (2d Cir.), cert. denied, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). In addition, the FLRA's findings of fact are conclusive, "if supported by substantial evidence on the record considered as a whole," 5 U.S.C. Sec. 7123(c). In analyzing a FLRA decision, the court "must first decide whether the [FLRA] has acted within its delegated authority," New York Council Ass'n, 757 F.2d at 507; if so, the court must determine whether the decision is "the product of reasoned decision-making," id.
 
 
 19
 However, an FLRA decision is not entitled to such deference when it interprets a statute other than the FSLMRA or resolves a conflict between the FSLMRA and another statute. See Veterans Admin. Med. Ctr. v. FLRA, 732 F.2d 1128, 1132 n. 7 (2d Cir.1984); accord Department of Treasury v. FLRA, 837 F.2d 1163, 1167 (D.C.Cir.1988). But see Dept. of Health & Human Servs. v. FLRA, 833 F.2d 1129, 1135 (4th Cir.1987) (court should defer to FLRA where FLRA's interpretation of other statute "bears directly on the 'complexities' of federal labor relations"). The FLRA's interpretation of the "other" statute is entitled to respect, but the court may engage in a de novo interpretation. Dept. of Treasury, 837 F.2d at 1167.
 
 1. Personal Service Contracts
 
 20
 The FSLMRA provides that no bargaining obligation shall affect an agency's right to hire "in accordance with applicable laws," 5 U.S.C. Sec. 7106(a)(2). The Union contends that the use of personal service contracts is unlawful, and that lawfulness therefore must be considered in determining whether this proposal would interfere with management rights. In addressing this argument, the FLRA stated that "on the record before [it] the Union has not demonstrated that the use of personal services contracts by the Agency is illegal," Jt.App. at 4 (emphasis added). The FLRA also found that the proposal interferes with the Army's right to hire under 5 U.S.C. Sec. 7106(a)(2)(A) because the Army's use of personal service contracts is "inseparable from the decision to hire," Jt.App. at 4. However, we need not address the relationship between personal service contracts and a decision to hire because we conclude that the Army's use of personal service contracts is unlawful. The FLRA's determination that it could not assess the legality of such contracts on the record before it is not "the product of reasoned decision-making," New York Council Ass'n, 757 F.2d at 507, for no "demonstration" is necessary to decide whether the Army's use of personal service contracts in the hiring of teachers is in accordance with law.
 
 
 21
 The Federal Acquisitions Regulations expressly prohibit agencies from awarding personal service contracts "unless specifically authorized by statute (e.g., 5 U.S.C. 3109) to do so." 48 C.F.R. Sec. 37.104(b) (1987). The Army does not dispute that it has no statutory authorization to use personal service contracts. Rather, it contends that the regulation bars use of such contracts only for employees covered by civil service regulations. Although the government is "normally required to obtain its employees by direct hire under competitive appointment or other procedures required by the civil service laws," id. Sec. 37.104(a), the language of section 37.104(b) is not limited to employees covered by the civil service regulations. Section 37.104(b) provides: "Agencies shall not award personal services contracts unless specifically authorized by statute ... to do so." Only specific statutory authorization may relieve an agency from the directive of section 37.104(b), and the Army does not point to any such authorization. Therefore, we conclude that the Army's use of personal service contracts in the hiring of teachers is an unlawful hiring practice.
 
 2. Employee Preference Proposal
 
 22
 In determining whether a proposal interferes with an agency's right to assign employees, the FLRA repeatedly has maintained a distinction between those proposals that "compel[] the selection of a particular individual, thus entirely eliminating the [a]gency's discretion to make individual judgments," United States Naval Ordnance Station v. FLRA, 818 F.2d 545, 549 (6th Cir.1987), and those proposals that "merely set forth a procedure the [a]gency would use when selecting among employees previously determined by management to be qualified to perform the work," id. at 550. Thus, in Laborers Int'l Union of North America v. Veterans Administration, 9 F.L.R.A. (No. 84) 703 (1982), the FLRA held:
 
 
 23
 The right to assign employees which is reserved to management under section 7106(a)(2)(A) of the statute encompasses management's discretion to establish the qualifications necessary to perform the duties generally assigned to the position and to determine whether an employee meets those qualifications.... Similarly, management's right to assign work pursuant to section 7106(a)(2)(B) encompasses discretion to establish the particular qualifications and skills needed to perform the work to be done, and to exercise judgment in determining whether a particular employee meets those qualifications. Thus, when management determines that only one employee possesses the requisite qualifications to do certain work, section 7106(a)(2)(B) reserves to management the right to assign the work to that particular employee.... Where, however, in management's judgment, two or more employees are equally qualified and capable of performing the work, the selection of any one of those employees to perform the work would be consistent with management's exercise of its discretion. Under such circumstances, the procedures by which employees previously judged by management to be equally qualified will be selected to perform the work is negotiable.
 
 
 24
 Id. at 706 (quoted in United States Naval Ordnance Station, 818 F.2d at 550).
 
 
 25
 In finding this proposal outside the duty to bargain, the FLRA cited its decision in Overseas Education Ass'n & Dep't of Defense Dependents Schools, 29 F.L.R.A. (No. 56) 628 (1987) (WESTLAW, FLB-FLRA database). In that case, the union proposed that "[a]ffected union employees shall be provided a duty-free lunch period if requested by the unit employee." The FLRA found that proposal to be non-negotiable because a unit employee would be given a duty-free lunch period "upon request," and the agency therefore was "preclude[d] ... from assigning any duties ... to those unit employees who exercise their option to request a duty-free lunch period."
 
 
 26
 Unlike the proposal in Overseas Education Ass'n, the proposal here would not result in relief from assignment upon request. The proposal merely would require the Army to "make every effort to fill extracurricular positions in accordance with the expressed preferences of the qualified employees in the bargaining unit in the school," Jt.App. at 4 (emphasis added). The proposal does not preclude the Army from determining who, among employees in the bargaining unit, is qualified to fill a particular position. Nor, in the event that positions cannot be filled in accordance with employee preferences, does the proposal prevent the Army from assigning qualified employees in the bargaining unit who object to the assignment. The Army need only make "every effort" to accommodate preferences; thereafter, the Army may seek qualified volunteers. The Army asserts that if no qualified teachers indicate a preference for a particular position, and no one volunteers, the Army cannot fill the position. We disagree. The proposal does not address such a situation. Therefore, the proposal preserves the Army's right to assign qualified unit or non-unit employees to the position.
 
 
 27
 Furthermore, the term "every effort" sets an objective, rather than a subjective, standard and involves no substitution of judgment whatever. Should a dispute arise in the future over the adequacy of the Army's efforts, an arbitrator would be fully competent to decide whether the Army's conduct constituted making "every effort."
 
 3. School Calendar Proposal
 
 28
 The FLRA has interpreted an agency's right to assign work, pursuant to 5 U.S.C. Sec. 7106(a)(2)(B), to include the discretion to determine when assignments will occur and when the assigned work will be performed. See, e.g., Overseas Educ. Ass'n & Dep't of Defense Dependents Schools, 29 F.L.R.A. (No. 49) 485 (1987) (WESTLAW, FLB-FLRA database) (proposal to designate Good Friday as school holiday held non-negotiable). We are mindful that the FLRA's interpretation of the FSLMRA is entitled to "considerable deference," Bureau of Alcohol, Tobacco & Firearms, 464 U.S. at 97, 104 S.Ct. at 444, and we find this interpretation reasonable, for "the right to determine what work will be done, and by whom and when it is to be done, is at the very core of successful management of the employer's business," National Treas. Employees Union v. FLRA, 691 F.2d 553, 563 (D.C.Cir.1982). Accordingly, we deny the Union's petition for review of this proposal.
 
 4. Salary Schedule Proposal
 
 29
 The FLRA consistently has held that compensation is within the scope of bargaining, see, e.g., Fort Stewart (Georgia) Ass'n of Educators & Fort Stewart Schools, 28 F.L.R.A. (No. 67) 547 (1987) (WESTLAW, FLB-FLRA database); Fort Knox Teachers Ass'n & Fort Knox Dependents Schools, 28 F.L.R.A. (No. 29) 179 (1987) (WESTLAW, FLB-FLRA database). In both cases, the FLRA held that nothing in the FSLMRA or its legislative history "bars negotiation of proposals relating to pay and fringe benefits insofar as (1) the matters proposed are not specifically provided for by law and are within the discretion of the agency and (2) the proposals are not otherwise inconsistent with law, Government-wide rule or regulation or an agency regulation for which a compelling need exists." Fort Knox, 28 F.L.R.A. (No. 29) 179.
 
 
 30
 Under the FSLMRA, employees have the right to engage in collective bargaining over conditions of employment. 5 U.S.C. Sec. 7102(2). "Conditions of employment" is defined as "personnel policies, practices, and matters ... affecting working conditions, except that such term does not include policies, practices, and matters ... to the extent such matters are specifically provided for by Federal statute." 5 U.S.C. Sec. 7103(a)(14)(C). We agree with the FLRA that because salary for teachers at Section 6 schools is not specifically provided for by federal statute, it is a condition of employment, over which employees have the right to bargain. See, e.g., AFGE & Dep't of the Air Force, 24 F.R.L.A. (No. 41) 377 (1986) (WESTLAW, FLB-FLRA database). However, the Army contends that it cannot be required to negotiate over the salary schedule proposal because the proposal is inconsistent with 20 U.S.C. Sec. 241 and Army Regulation 352-3.1-7, and interferes with its right to determine its budget under section 7106(a)(1) of the FSLMRA.
 
 
 31
 Under the FSLMRA, the duty to bargain in good faith extends, "to the extent not inconsistent with any Federal law ..., to matters which are the subject of any rule or regulation only if the rule or regulation is not a Government-wide rule or regulation." 5 U.S.C. Sec. 7117(a)(1) (emphasis added). Because the FLRA's resolution of this issue involves the interpretation of 20 U.S.C. Sec. 241, a statute other than the FSLMRA, the FLRA decision is not entitled to "considerable deference," Veterans Admin. Med. Ctr., 732 F.2d at 1132 n. 7, and this Court may engage in a de novo interpretation of 20 U.S.C. Sec. 241, see Department of Treasury, 837 F.2d at 1167.
 
 
 32
 20 U.S.C. Sec. 241[1] authorizes the operation of Section 6 schools for children living on federal property, including children of members of the armed forces. Section 241 requires education and cost-per-pupil to be comparable to those in surrounding communities, see 5 U.S.C. Sec. 241(a), (e), but does not specifically provide for the salaries of dependent school teachers. Indeed, cost parity may be maintained despite wide variation in what teachers are paid. Similarly, educational comparability may be maintained even with wide variations in teachers' pay. Because section 241 does not specifically establish compensation, the Army has the duty under 5 U.S.C. Sec. 7117(a) to bargain in good faith over the salary schedules for teachers.
 
 
 33
 The Army next argues that the proposal is inconsistent with Army Regulation 352-3.1-7,[2] and that there is a compelling need for this regulation. Where an agency relies upon a rule or regulation in support of its position that a proposal is non-negotiable, the FLRA must determine whether there is a "compelling need" for the rule or regulation, because the duty to bargain extends to "matters which are the subject of any agency rule or regulation ... only if the [FLRA] has determined ... that no compelling need ... exists for the rule or regulation," 5 U.S.C. Sec. 7117(a)(2). 5 C.F.R. Sec. 2424.11 defines a compelling need to exist, inter alia, where the "rule or regulation is essential, as distinguished from helpful or desirable, to the accomplishment" of the agency's functions, or where the "rule or regulation implements a mandate to the agency, ... which implementation is essentially nondiscretionary in nature," id. Sec. 2424.11(a), (c). The Army contends that 20 U.S.C. Sec. 241(a), by directing the Army to ensure that education at its schools is "comparable to free public education provided for children in comparable communities in the State," amounts to an essentially nondiscretionary mandate. However, as noted above, the Army may accomplish educational comparability and cost parity even with wide variations in teachers' pay. Accordingly, we agree with the FLRA that the Army has failed to establish a compelling need for Army Regulation 352-3.1-7 that relieves the Army from the duty to bargain in good faith.
 
 
 34
 Finally, we reject the Army's assertion that the proposal interferes with its right to determine its budget. To establish such an interference, an agency must show that the proposal either 1) "prescribe[s] the particular programs or operations the agency would include in its budget or ... prescribe[s] the amount to be allocated in the budget," or 2) would require significant and unavoidable increased costs that are not offset by compensating benefits. AFGE & Air Force Logistics Command, 2 F.L.R.A. (No. 77) 604 (1980) (WESTLAW, FLB-FLRA database), enforced as to other matters sub nom. Department of Defense v. FLRA, 659 F.2d 1140 (D.C.Cir.1981), cert. denied sub nom. AFGE v. FLRA, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). We defer to the FLRA's determination that the Army failed to satisfy either prong of the test. The proposal does not specify particular salary figures; consequently, the proposal does not prescribe an amount to be allocated in the budget. In addition, as discussed above, the proposal would not necessarily result in increased costs to the Army. Accordingly, the Army has failed to establish that the proposal would interfere with its right to determine its budget.
 
 CONCLUSION
 
 35
 For the foregoing reasons, we grant the FLRA's petition to enforce the order with respect to the salary schedule and school calendar proposals and deny it in all other respects. We grant the Union's petition for review on the personal service contract and employee preference proposals and deny it in all other respects. We deny the Army's petition for review in its entirety.
 
 
 
 [1]
 20 U.S.C. Sec. 241 (1982) provides in pertinent part:
 (a) Necessary arrangements by Secretary; standard of education
 In the case of children who reside on Federal property--
 * * *
 the Secretary shall make such arrangements ... as may be necessary to provide free public education for such children. Such arrangements to provide free public education may also be made for children of members of the Armed Forces on active duty, if the schools in which free public education is usually provided for such children are made unavailable to them as a result of official action by State or local governmental authority and it is the judgment of the Secretary ... that no local educational agency is able to provide suitable free public education for such children. To the maximum extent practicable, the local educational agency, or the head of the Federal department or agency, with which any arrangement is made under this section, shall take such action as may be necessary to ensure that the education provided pursuant to such arrangement is comparable to free public education provided for children in comparable communities in the State.... For the purpose of providing such comparable education, personnel may be employed and the compensation, tenure, leave, hours of work, and other incidents of the employment relationship may be fixed without regard to the Civil Service Act and rules and the following: (1) Chapter 51 and subchapter III of chapter 53 of Title 5; (2) subchapter I of chapter 63 of Title 5; (3) sections 5504, 5541 to 5549, and 6101 of Title 5; (4) sections 1302(b), (c), 2108, 3305(b), (a)(2), 3308 to 3318, 3319(b), 3320, 3351, 3363, 3364, 3501 to 3504, 7511, 7512, and 7701 of Title 5; and (5) chapter 43 of Title 5....
 (e) Limit on Payments
 To the maximum extent practicable, the Commissioner shall limit the total payments made pursuant to any such arrangement for educating children ... to an amount per pupil which will not exceed the per pupil cost of free public education provided for children in comparable communities in the State....
 
 
 [2]
 Army Regulation 352-3.1-7 provides:
 "Education provided pursuant to the provisions of Section 6 for children residing on Federal property will be considered comparable to free public education offered by selected communities of the State when the following facts are, to the maximum extent practicable, equal: ... [inter alia,] Salary schedules."