875 F.2d 1179
 131 L.R.R.M. (BNA) 2332, 54 Ed. Law Rep. 94
 FORT KNOX DEPENDENT SCHOOLS, Petitioner/Cross-Respondent,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent/Cross-Petitioner,
and
Fort Knox Teachers Association, Intervenor.
 Nos. 87-3395, 87-3524.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 12, 1988.
Decided May 11, 1989.
Rehearing and Rehearing En Banc Denied Aug. 10, 1989.
 
 Robert K. Rasmussen (argued), William Kanter (Lead Counsel), Appellate Staff, Civ. Div., Room 3617, Dept. of Justice, Washington, D.C., for petitioner/cross respondent.
 Ruth Peters, Office of the Solicitor, Washington, D.C., William E. Persina, Jill A. Griffin (argued), for respondent/cross petitioner.
 Dennis Franklin Janes (argued), John Frith Stewart, Louisville, Ky., Adrienne A. Berry, for intervenor-respondent.
 Mark D. Roth, General Counsel, American Federation of Government Employees, AFL-CIO, Washington, D.C., Kevin M. Grile, Staff Counsel, American Federation of Government Employees, AFL-CIO, Chicago, Ill., for amicus curiae American Federation of Government Employees, AFL-CIO.
 Before WELLFORD, BOGGS and NORRIS, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 This is a dispute about the authority of the Federal Labor Relations Authority (FLRA) under the Federal Service Labor-Management Relations Act (FSLMRA) to order the United States Army, operating Fort Knox, Kentucky, and its base school system, to bargain with the teachers and their union over salary. A similar dispute about certain employees working at military facilities has been the subject of a number of recent decisions by other federal circuit courts which differ materially as to results reached and the basis for the disparate opinions and analysis. Because we believe after a careful consideration of these decisions that those which have reversed the FLRA in like situations are correct in their analysis of the statute and regulations involved, we reverse the order in this case appearing at 25 F.L.R.A. (No. 95) 203 (1987) (WESTLAW, FLB-FLRA database).
 
 
 2
 It is clear that we need not defer to the FLRA's interpretations and legal conclusions in this case, because "such deference only applies when the FLRA interprets the FSLMRA." Fort Stewart Schools v. F.L.R.A., 860 F.2d 396, 419 (11th Cir.1988); see West Point Elementary School Teachers Association v. F.L.R.A., 855 F.2d 936, 940 (2d Cir.1988); Shanty Town Associates Limited Partnership v. E.P.A., 843 F.2d 782, 790 n. 12 (4th Cir.1988); Department of the Treasury, Bureau of Engraving and Printing v. F.L.R.A., 838 F.2d 1341, 1342 (D.C.Cir.1988); Department of the Navy, Military Sealift Command v. F.L.R.A., 836 F.2d 1409, 1410 (3d Cir.1988); New Jersey Air National Guard v. F.L.R.A., 677 F.2d 276, 281-82 & n. 6 (3d Cir.), cert. denied, 459 U.S. 988, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982); Tsosie v. Califano, 651 F.2d 719, 722 (10th Cir.1981).
 
 
 3
 The issues here are not confined to interpretation of the law or regulations thereunder which create FSLMRA or FLRA, and FLRA is not entitled to the ordinary deference afforded an agency decision or interpretation when it "resolves a conflict between the FSLMRA and another statute" or a regulation promulgated under another statute. West Point, 855 F.2d at 940, 942; see also Department of the Treasury, 838 F.2d at 1342; Sealift, 836 F.2d at 1410; Veterans Administration Medical Center v. F.L.R.A., 732 F.2d 1128, 1132 n. 7 (2d Cir.1984). Our procedure, then, is to review the applicable law and regulations in this dispute in a fashion that other courts have described as "de novo" or "plenary." Department of the Treasury, 838 F.2d at 1342; Sealift, 836 F.2d at 1410; see also Creque v. Luis, 803 F.2d 92, 93 (3d Cir.1986).
 
 
 4
 On the other hand, at issue in this controversy along with FSLMRA is the appropriate interpretation of 20 U.S.C. Sec. 241[1] by the Army, the agency charged with the responsibility for carrying out this statute. The Army has issued its regulation, AR 352-3, 1-7,[2] in carrying out the statutory mandate. It is the Army, rather than FLRA, which may be entitled to deference in the construction of Sec. 241, because "[n]ormally, an agency's interpretation of the statute it administers is entitled to deference, provided that the interpretation is a permissible construction of the statute. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45 [104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984) ]." Sealift, 836 F.2d at 1410; see Jones v. Board of Education Cleveland City School District, 474 F.2d 1232 (6th Cir.1973). This court, then, owes no particular deference to FLRA in reaching our decision as to the meaning of Sec. 241. Instead, it is the Army's interpretation which is entitled to deference. The Army has interpreted 20 U.S.C. Sec. 241 to mean that there may be no bargaining over "salary schedules" or wages. See AR 352-3, 1-7 (reprinted supra n. 2).
 
 
 5
 One statute in question, which FLRA has interpreted in its decision on appeal, requires bargaining over "conditions of employment," defined as "personnel policies, practices and matters ... affecting working conditions." 5 U.S.C. Sec. 7103(a)(14). Absent from this statute mandating bargaining by federal agencies with its employees is any word of "wages," "pay," "rates of pay," or "salary." If, as did the Third Circuit in Sealift, one compares the above language in Sec. 7103 to the language in 29 U.S.C. Sec. 158(d) of the National Labor Relations Act, it must be deemed that the phrase "conditions of employment," as defined in FSLMRA, "implies a narrower range of bargainable matters under the [above] Labor Management Statute than under NLRA." 836 F.2d at 1416 n. 14. The FSLMRA itself "does not specifically include 'pay' or 'pay practices' as bargainable matters." Id. at 1416. We agree with the Sealift court that "[t]he history [of FSLMRA] is replete ... with indications that Congress did not intend to subject pay of federal employees to bargaining." Id. at 1417 (emphasis added). A detailed analysis of the legislative history of FSLMRA reveals that " 'wages, fringe benefits, and numbers of employees in an agency' remain beyond the scope of collective bargaining" by federal departments and agencies. Id. at 1418 (quoting 124 Cong.Rec. H9639 (daily ed. Sept. 13, 1978) and citing House Reports, Senate Reports, and statements of Congressmen Clay, Udall, Ford, and Devinski, and of Senator Sasser); see 124 Cong.Rec. S14,281 (daily ed. Aug. 24, 1978); Subcomm. on Postal Personnel and Modernization of the House Comm. on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Federal Service, Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978, at 914 (1979) [hereinafter Legislative History]; see also Department of the Treasury v. F.L.R.A., 838 F.2d 1341, 1342-43 (D.C.Cir.1988) (stating that it agreed with this interpretation reached "after examining incisively the language and legislative history" of FSLMRA).[3] We conclude that wages and other compensation matters with regard to federal employees fall outside the duty to bargain under 5 U.S.C. Secs. 7101-7135 (FSLMRA). In this respect we agree with the rationale of Judge Starr expressed in Department of Defense Dependents Schools v. F.L.R.A., 863 F.2d 988, 988 (D.C.Cir.1988).[4]
 
 
 6
 Not only do the words of the statute, when contrasted with NLRA and other statutes dealing with the duty to bargain, fail to include wages and rates of compensation as a condition of employment, the legislative history of the statute indicates that Congress intended the omission. More than that, logic indicates that Congress would not leave to various federal agencies the authority to expand the budgets and fiscal limitations placed upon those agencies by requiring them to bargain about increases in pay and fringe benefits once budget boundaries were set by the Congress. It is obvious that salary and fringe benefits are the items most likely to involve substantial overspending if left to collective bargaining, particularly with respect to a school system for minor dependents of United States military and civilian personnel.
 
 
 7
 Fort Stewart Schools v. F.L.R.A., 860 F.2d 396 (11th Cir.1988), reaches a contrary result by relying basically on FLSA authority, including the decision involved in the instant appeal.[5] In its analysis of legislative history, Judge Hatchett concedes that Congressman Devinski "stated that wages and fringe benefits remained beyond the scope of collective bargaining[,] 124 Cong.Rec. H9639 (daily ed. Sept. 13, 1978) (remarks of Rep. Devinski); Legislative History at 935[,]" and that Congressman Clay "stated that 'employees still ... cannot bargain over pay[,]' 124 Cong.Rec. E4293 (daily ed. Aug. 3, 1978 (remarks of Rep. Clay); Legislative History at 935." 860 F.2d at 402 (emphasis in original). We find the rationale of Fort Stewart to be unconvincing, particularly in its observation that "the Army could maintain cost parity and educational comparability despite wide variations in teachers' salaries" without indicating how this legerdemain might be accomplished. Id. at 403 (emphasis added). Fort Stewart gave no deference to the Army's interpretation of Sec. 241, and the court concluded that "section 241 requires equality only to the maximum extent possible, not exact equality." Id. at 405. We decline to defer to FLRA rather than the Army in deciding whether or not a union's proposals on higher salary or overtime pay would not "infringe on an agency's right to determine its budget merely because the proposed matter will increase the agency's costs." Id. at 423.
 
 
 8
 In addition to FLRA decisions, the Second Circuit's holding in West Point, 855 F.2d 936, was the basis for the Fort Stewart opinion. See 860 F.2d at 403, 405. The West Point decision is dubious because it relied upon the FLRA decision at issue in the instant appeal, and cited no authority for its assertion that "cost parity [between the Army base schools and public schools] be maintained despite wide variation in what teachers are paid." See 855 F.2d at 943. There is no legislative history analysis set out in West Point. Instead, the court relied on unsupported assertions that wage or salary increases would not "necessarily result in increased costs to the Army." Id. at 944. The court concluded that the Army did not have a compelling need to regulate teacher salaries and that the court's interpretation of Sec. 241 did not interfere with the Army's right to determine its own budget. Id. at 943.
 
 
 9
 The Fourth Circuit has sent conflicting signals with regard to this issue. Initially, in United States Department of Defense Dependent Schools, Ft. Bragg, N.C. v. F.L.R.A., 838 F.2d 129 (4th Cir.1988), rev'ing, 25 F.L.R.A. 1132 (1987), the court carefully analyzed Sec. 241 and held that the Army's regulation precluding wage bargaining implemented properly the mandate of the statute. That decision, however, was vacated after a stipulation to dismiss was filed. The Fourth Circuit then issued another opinion which seemed to reach a result contrary to that in Fort Bragg, although not in a military base school context. Nuclear Regulatory Commission v. F.L.R.A., 859 F.2d 302 (4th Cir.1988). But, that decision has also been vacated for an en banc resolution. In any event, apart from the case under consideration, the defense dependents school cases involving similar issues have resulted in a split upon appellate consideration. There is, then, no "majority" view on the issues we now ponder.
 
 
 10
 For the reasons indicated, we adopt what we believe to be the better reasoned view. We accordingly REVERSE the decision of FLRA in this case.
 
 BOGGS, Circuit Judge, dissenting:
 
 11
 This case is before us on a petition for review and application for enforcement of an order by the Federal Labor Relations Authority (FLRA). That order requires the Fort Knox Dependent Schools (the Army) to bargain with the Fort Knox Teachers Association (the union) regarding wages for teachers working overtime as chaperones during trips away from school property. The Army appeals that order, contending that federal statutes and regulations mandate that wages for teachers in federally supervised schools (Section 6 schools) be equal to the wages paid to teachers in the local school districts. 20 U.S.C. Sec. 241.[1] The Army further argues that these statutes and regulations do not permit negotiation regarding wages. The FLRA and the union contend that all conditions of employment, including wages, must be negotiated, subject only to overarching statutory controls on costs. The FLRA also argues that its interpretation of the relevant statutes and regulations should be afforded great deference. Because I believe, after a careful consideration of decisions in related cases by other courts of appeals, that those courts which have upheld the FLRA in like situations are correct in their analysis of the statute and regulations involved, I dissent, and would affirm the order in this case appearing at 25 F.L.R.A. (No. 95) 203 (1987) (WESTLAW. FLB-FLRA database).
 
 
 12
 The first issue to be addressed in this case is the degree of deference a reviewing court must afford FLRA decisions. The FSLMRA states that the standard of review of FLRA decisions is the same as that contained in the Administrative Procedure Act (APA). 5 U.S.C. Sec. 7123(c). The APA states that an agency's decision should not be set aside unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1982). This high degree of deference to FLRA determinations is justified because "Congress has specifically entrusted the [FLRA] with the responsibility to define the proper subjects for collective bargaining [under the FSLMRA], drawing upon its expertise and understanding of the special needs of the public sector labor relations." Library of Congress v. FLRA, 699 F.2d 1280, 1289 (D.C.Cir.1983).
 
 
 13
 However, the FLRA's expertise does not extend beyond its interpretations of its own enabling statute, the FSLMRA. Department of Treasury v. FLRA, 837 F.2d 1163, 1167 (D.C.Cir.1988); Department of the Navy, Military Sealift Command v. FLRA, 836 F.2d 1409, 1410 (3d Cir.1988). When an agency "interprets another agency's statute or resolves a conflict between its own statute and the statute of another agency," Sealift, 836 F.2d at 1410, such a high degree of deference is not justified.
 
 
 14
 Thus, the FLRA is entitled to great deference regarding its interpretation of the FSLMRA. However, the Army, and not the FLRA, must be given that same deference with respect to 20 U.S.C. Sec. 241.[2] With these constraints in mind, I now proceed to a consideration of the merits of the FLRA order.
 
 
 15
 Although this is a question of first impression in this jurisdiction, a number of decisions by other courts provide us with guidance in determining whether the salaries of teachers in Section 6 schools is a proper subject for bargaining. The Third Circuit and the District of Columbia Circuit both have held that wages are exempt from bargaining under the FSLMRA. Sealift, 836 F.2d at 1420; Department of Treasury, Bureau of Engraving and Printing v. FLRA, 838 F.2d 1341, 1343 (D.C.Cir.1988); Department of Defense Dependent Schools v. FLRA, 863 F.2d 988, 994 (D.C.Cir.1988). However, both Sealift and Treasury involved employees whose wages were determined by the Prevailing Rate Act. Sealift, 836 F.2d at 1411; Treasury, 838 F.2d at 1342. Both courts held in those cases that the Prevailing Rate Act "renders ... wages unbargainable." Treasury, 838 F.2d at 1343; Sealift, 836 F.2d at 1420. The involvement of the Prevailing Rate Acts in those cases makes them entirely distinguishable from the case at hand. I recognize that in Department of Defense, the District of Columbia Circuit, in a case much like the instant one, decided to follow Sealift and Treasury, finding that the legislative history indicated that Congressional intent was to exempt pay from negotiability under the FSLMRA. Defense, at 994 n. 12. However, in my judgment, that decision underestimated the importance of the Prevailing Rate Acts in the Sealift and Treasury decisions. The Prevailing Rate Acts are what rendered wages unbargainable in those cases, not the courts' interpretations of the FSLMRA. Treasury, 838 F.2d at 1343; Sealift, 836 F.2d at 1420. Thus, reliance on those decisions in a case which does not involve a Prevailing Rate Act is inappropriate.
 
 
 16
 However, other Circuits have decided cases which more closely match the instant case in that no Prevailing Rate Act or other distinguishing factor was present. The majority chooses to disagree with recent decisions of the Second and Eleventh Circuits. West Point Elementary School Teachers Association v. FLRA, 855 F.2d 936 (2d Cir.1988); Fort Stewart Schools v. FLRA, 860 F.2d 396 (11th Cir.1988). I respectfully disagree with the majority's conclusions, and choose to follow what appears to me to be the better-reasoned view.
 
 
 17
 In West Point, the court reached what I see as a more sensible decision, which is consistent with my reading of the relevant legislative history. The court first noted that the term "conditions of employment" in Sec. 7102(2) is defined in Sec. 7103(a)(14)(C) of the FSLMRA to mean " 'personnel policies, practices, and matters ... affecting working conditions, except that such term does not include policies, practices, and matters ... to the extent such matters are specifically provided for by Federal statute.' " 855 F.2d at 947 (quoting 5 U.S.C. Sec. 7103(a)(14)(C)). Thus, the court held that "because salary for teachers at Section 6 schools is not specifically provided for by federal statute, it is a condition of employment, over which employees have a right to bargain." Ibid.
 
 
 18
 The court then proceeded to examine 20 U.S.C. Sec. 241 and AR 352-3, 1-7, concluding that neither the statute nor the regulation required a contrary result. As regards Sec. 241, the court stated that "cost parity may be maintained despite wide variation in what teachers are paid." Id. at 943. "Similarly, educational comparability may be maintained even with wide variations in teachers' pay." Ibid. Thus, the court found that Sec. 241 does not establish salary rates and, thus, the "Army has the duty under 5 U.S.C. Sec. 7117(a) to bargain in good faith over the salary schedules for teachers." Ibid.
 
 
 19
 Regarding AR 352-3, 1-7, the court found that there was no compelling need for this regulation, noting that the duty to bargain prevails over regulations unless the regulation serves a "compelling need" of the agency. Ibid. (citing 5 U.S.C. Sec. 7117(a)(2)). The court then relied on the definition of "compelling need" set out in 5 C.F.R. Sec. 2424.11(a), (c), finding that Sec. 241 did not mandate specific salaries, nor render the question of salaries nondiscretionary. Ibid. Again explaining that comparability of education or cost per pupil does not mandate equivalence in teachers' salaries, ibid., the court found that there was no compelling need for the regulation.
 
 
 20
 The Eleventh Circuit reached the same conclusion in Fort Stewart based on a nearly identical analysis. Fort Stewart, at 406. In addition, that court noted aspects of the legislative history of the FSLMRA that, I believe, refute the District of Columbia Circuit's comments to the contrary in Department of Defense. First, the court noted that the National Labor Relations Act (NLRA) allows bargaining over " 'wages, hours and other terms and conditions of employment.' " Id. at 400 (citing 29 U.S.C. Sec. 158(d) (Supp.1988) (emphasis added)). The court reasoned that the use of the word "other" demonstrated that wages and hours were two examples of "conditions of employment." Ibid. The court then continued, demonstrating that the remarks relied on by the District of Columbia Circuit were made with the "understanding that Congress generally regulates such matters through its prevailing rate acts, not with the understanding that the FSLMRA barred all wage negotiations." Id. at 401. The court concluded that "Congress intended the FSLMRA to continue the existing practices regarding the negotiation of wages." Ibid. Although those existing practices generally did not allow bargaining over wages, ibid., the court noted that there were "existing practice[§ which] allowed federal employees to negotiate wages in the rare instances where Congress did not specifically establish wages and fringe benefits." Id. at 402 (citations omitted). The court reasoned that Congress must have known of these practices. Ibid. Thus, the court concluded that "Congress did not intend to preclude bargaining over wages and related benefits." Ibid.
 
 
 21
 I agree with this reading of the legislative history of the FSLMRA, as well as with the interpretation of Sec. 241 by the Second and Eleventh Circuits. A comparable education does not require equal wages. A cost-per-pupil limitation in the aggregate does not preclude variation in an individual component of total cost, wages. 20 U.S.C. Sec. 241(a) & (c). As the FLRA reasoned, as long as salary differentials are compensated for in other budget items, the total costs can remain comparable. As an obvious example, a federal school system could hire more qualified (and more expensive) teachers, but maintain a higher pupil-teacher ratio. This reasoning leads to the conclusion that Sec. 241 does not mandate that salaries of teachers in Section 6 schools be equal to those of teachers in surrounding public schools. Further, this reasoning demonstrates the lack of a "compelling need" for AR 352-3, 1-7(h).[3]
 
 
 22
 Therefore, I would hold that the Army must negotiate with the union over the union's proposal regarding overtime wages for teachers who volunteer for chaperone duty. I see this conclusion as entirely consistent with both the FSLMRA and Sec. 241. Further, it does not conflict with any "compelling need" on the part of the Army. Thus, I would order that the FLRA order be enforced, and deny the Army's cross-petition for relief.
 
 
 
 [1]
 20 U.S.C. Sec. 241 states, in pertinent part:
 ... To the maximum extent practicable, the local educational agency, or the head of the Federal department or agency, with which any arrangement is made under this section, shall take such action as may be necessary to ensure that the education provided pursuant to such arrangement is comparable to free public education provided for children in comparable communities in the State, or, in the case of education provided under this section outside the continental United States, Alaska, and Hawaii, comparable to free public education provided for children in the District of Columbia.
 
 
 [2]
 The Army's interpretation of 20 U.S.C. Sec. 241, as stated in the Army regulation, is:
 Education provided pursuant to the provisions of Section 6 for children residing on Federal property will be considered comparable to free public education offered by selected communities of the State when the following factors are, to the maximum extent practicable, equal: * * * h. Salary schedules.
 AR 352-3, 1-7.
 
 
 [3]
 Contrary to the implication of Judge Boggs, the Sealift and Department of the Treasury decisions are based squarely on an analysis of FSLMRA. Both cases hold that wages and compensation matters are outside the duty to bargain under FSLMRA apart from considerations of the Prevailing Rate Act. See Department of the Treasury, 838 F.2d at 1342-43; Sealift, 836 F.2d at 1419-20
 
 
 [4]
 This opinion is now the subject of an en banc review by the District of Columbia circuit
 
 
 [5]
 "Because this FLRA decision is within its authority, we must defer to its conclusion unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " Fort Stewart, 860 F.2d at 400 (referring to Fort Knox Teachers Association and Fort Knox Dependent Schools, 28 F.L.R.A. (No. 29) 179 (1987) (WESTLAW, FLB-FLRA database)). The court also relied upon West Point Elementary School Teachers Association v. F.L.R.A., 855 F.2d 936, 942 (2d Cir.1988), observing that "the Second Circuit implicitly adopted the FLRA's conclusion that the FSLMRA does not bar negotiation of proposals involving compensation and fringe benefits." 860 F.2d at 401
 
 
 [1]
 20 U.S.C. Sec. 241 states, in pertinent part:
 ... To the maximum extent practicable, the local educational agency, or the head of the Federal department or agency, with which any arrangement is made under this section, shall take such action as may be necessary to ensure that the education provided pursuant to such arrangement is comparable to free public education provided for children in comparable communities in the State, or, in the case of education provided under this section outside the continental United States, Alaska and Hawaii, comparable to free public education provided for children in the District of Columbia.
 
 
 [2]
 The Army's interpretation of 20 U.S.C. Sec. 241 is put forth in Army Regulation 352-3, 1-7, which states:
 Education provided pursuant to the provisions of Section 6 for children residing on Federal property will be considered comparable to free public education offered by selected communities of the State when the following factors are, to the maximum extent practicable, equal:
 * * *
 h. Salary schedules.
 
 
 [3]
 I note that 20 U.S.C. Sec. 241 was amended in 1985, when Congress directed that all Section 6 schools be transferred "to the local school districts of the States in which such schools are located" by July 1, 1990. Act of December 3, 1985, Pub.L. No. 99-167, Sec. 824, 99 Stat. 992 (1985). Thus, any decision reached by this court or any other courts of appeals likely will be only temporary, and will expire with the implementation of the July 1990 transfer