**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 82–7154.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1983.

Decided March 14, 1983.

John F. Bufe, Deputy Counsel, Washington, D.C., for petitioner.

Pamela P. Johnson, Washington, D.C., for respondent.

Before BROWNING, FLETCHER, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–7135, governs labor-management relations within the federal civil service. The act guarantees employees of virtually all federal agencies, *id.* § 7103(a)(3), the right to bargain collectively over conditions of employment, *id.* § 7102(2),[1] but exempts from negotiation proposals affecting management rights, *id.* § 7106.[2] If a federal agency takes the position that a proposal made on behalf of its employees is exempt from negotiation, the employees' exclusive bargaining representative may then appeal the agency's allegation of nonnegotiability to the Federal Labor Relations Authority (FLRA)[3] for a negotiability determination, *id.* § 7117(c)(1). The Civil Service Reform Act requires the FLRA to issue a "written decision on the [agency's] allegation and specific reasons therefor . . . ." *Id.* § 7117(c)(6).

The issue of negotiability arose in this case after the National Treasury Employees Union (Union) submitted to the Department of Health and Human Services (Department) four proposals concerning employee performance appraisal systems.[4]

1. Section 7102 provides:
   Each employee shall have the right . . .
   . . . .
   (2) to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter.

2. Section 7106 provides:
   (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency— ·
   . . . .
   (2)(A) to hire, assign, direct, layoff, and retain employees in the agency . . . ;
   (2)(B) to assign work . . . .
   . . . .
   (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
   . . . .
   (2) procedures which management officials of the agency will observe in exercising any authority under this section . . . .

3. Under the Civil Service Reform Act of 1978, the FLRA's role in labor relations within the federal civil service is analogous to the National Labor Relations Board's role under the National Labor Relations Act. *Department of Defense, Army-Air Force Exchange Service v. Federal Labor Relations Authority,* 659 F.2d 1140, 1144 (D.C.Cir.1981).

4. Congress, in an effort to reform the civil service, required each agency to develop perform-

The Department refused to bargain with the Union over these proposals, contending that they infringed on the Department's management rights. The Union then appealed to the FLRA for a negotiability determination under section 7117(c). The FLRA concluded that the Union's proposals interfered with the Department's management rights to assign and direct work and, therefore, were not within the Department's duty to bargain.

Pursuant to 5 U.S.C. § 7123, the Union petitioned this court for review of two of its proposals that related to "critical elements." A "critical element" is a component of an employee's job that is of such importance that the failure to meet it requires remedial action, including removal. 5 C.F.R. § 430.-202 (1981).

The two proposals at issue are as follows:
*Proposal 2*

The employer and the union agree that the following standards and procedures shall be used in drawing up critical elements.

(a) Critical elements shall relate only to tasks involving at least a majority of an employee's work time.

(b) Critical elements shall only be elements which are in fact critical to the performance of the job.

. . . .

(d) Critical elements shall be mutually exclusive and explicitly defined. Critical elements shall not be defined or applied in a manner to be at cross purposes with each other.

(e) If a critical element has more than one aspect or component then the employee will be deemed as failing to meet the critical element, if and only if the employee is deficient in all aspects of the critical element.

ance appraisal systems designed to evaluate employees on the basis of objective criteria. 5 U.S.C. § 4302; *see National Treasury Employees Union v. Federal Labor Relations Authority*, 691 F.2d 553, 555 (D.C.Cir.1982).

**5.** *Aff'd sub nom. National Treasury Employees Union v. Federal Labor Relations Authority*, 691 F.2d 553 (D.C.Cir.1982).

(f) The line between unacceptable and minimally acceptable performance shall be defined precisely and distinguished.

(g) Critical elements, after full negotiation . . . will be published in the position description of each employee. Critical elements will be listed in order of priority in the position description. This information shall be supplied to each employee in his/her current position and at the time of transfer or promotion to a different position.

(h) Employees shall receive copies of the critical elements of all supervisors in their chain of command. This information shall be supplied to each employee in his/her current position and at the time of transfer or promotion to a different position. The employer agrees to supply the union with copies, free of charge, of the critical elements for each supervisory or managerial position within the agency, once a year.

*Proposal 4*

After fully negotiating all critical elements . . . the employer and the union agree to review the critical elements after one year with the option of the union to open negotiations to change those elements.

The FLRA's written decision of nonnegotiability did not address each of the Union's proposals separately. Instead, the FLRA merely referred to its earlier decision in *National Treasury Employees Union and Department of the Treasury, Bureau of the Public Debt,* 3 FLRA No. 119 (1980),[5] which involved a different set of proposals[6] submitted by the Union to the Bureau of the Public Debt. In its decision in this case the FLRA said:

**6.** In *Bureau of Public Debt,* the Union submitted for negotiation the following two proposals:

Accounts Maintenance Clerks, GS–502–3/5, must maintain the following minimum rates:
A. To retain his/her position incumbent must process 9.0 batches per hour.
B. To receive a within-grade step increase incumbent must process 9.0 batches per hour. *See* 3 FLRA No. 119 at 1.

In ... *Bureau of the Public Debt* ... [we] held that a proposal to establish a particular critical element and performance standard would directly interfere with the exercise of management's rights to direct employees and to assign work under section 7106(a)(2)(A) and (B) of the Statute, and therefore was not within the duty to bargain. Since all four proposals in this case would likewise interfere with those management rights, they bear no dispositive difference from the proposal held not to be within the duty to bargain in the *Bureau of the Public Debt* case. Therefore, for the reasons fully set forth in *Bureau of the Public Debt,* proposals 1 through 4 must also be held not to be within the duty to bargain. *See also American Federation of Government Employees, AFL–CIO, Local 32 and Office of Personnel Management, Washington, D.C.,* 3 FLRA No. 120 (1980), at pages 4–5.

7 FLRA No. 115 at 727–28 (footnote omitted).

 The FLRA's decision in *Bureau of the Public Debt* explained in detail how the Union's proposals infringed on management's rights. In the instant case, however, the FLRA provided no reasoned explanation. Its ruling merely referred the Union to the FLRA's earlier *Bureau of the Public Debt* decision that considered two proposals which, on their face, differ significantly from Proposals 2 and 4.

Section 7117(c)(6) requires that the FLRA provide specific reasons in its written decisions concerning negotiability of collective bargaining proposals. This requirement was undoubtedly written into the statute, in part, to facilitate appellate review. We have studied the FLRA's lengthy decision in *Bureau of the Public Debt* and have encountered difficulty in deciphering the specific reasons for the decision of the FLRA in this case from a reading of its decision in that case. It was not until we had the benefit of counsel's oral argument that we were able to discern the FLRA's

reasons for its decision as to each proposal in this case.

This matter is therefore remanded to the FLRA for a written decision that provides specific reasons for its determination that each of the Union's proposals, including all subsections thereof, are nonnegotiable.

REMANDED.