NATIONAL TREASURY EMPLOYEES
UNION, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

No. 84–7034.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 12, 1985.

Decided Aug. 5, 1985.

Lois G. Williams, Washington, D.C., for petitioner.

Pamela Johnson, Washington, D.C., for respondent.

Before DUNIWAY and CANBY, Circuit Judges and REDDEN* District Judge.

---

* The Honorable James A. Redden, United States District Judge for the District of Oregon, sitting by designation.

CANBY, Circuit Judge:

Petitioner National Treasury Employees Union (the Union) challenges a ruling of the Federal Labor Relations Authority (FLRA) that the Union's collective bargaining proposals are statutorily exempt from negotiation.

## BACKGROUND

The Civil Service Reform Act requires that federal agencies develop performance appraisal systems for their employees. 5 U.S.C. § 4302(a). Regulations provide that each employee is to be apprised periodically of the critical elements and performance standards applicable to his or her job. 5 C.F.R. § 430.203 (1983).[1]

In negotiations with the Department of Health & Human Services (HHS), the Union proposed several standards and procedures to be used in establishing critical elements.[2] HHS viewed these proposals as statutorily exempt from negotiation, and the Union, under 5 U.S.C. § 7117, appealed to the Federal Labor Relations Authority (FLRA) for a determination of negotiability. The FLRA concluded that the Union's proposals interfered with HHS' right to assign and direct work, and, as such, were outside its statutory duty to bargain. The FLRA decision was brought to us in a prior appeal and we held that the FLRA had provided "no reasoned explanation" for its ruling. We therefore remanded the case to the FLRA "for a written decision that provides specific reasons for its determination that each of the Union's proposals ... are nonnegotiable." *Nat. Treasury Emp. Union v. FLRA*, 701 F.2d 781, 784 (9th Cir. 1983). The FLRA complied, and this appeal follows.

## DISCUSSION

The duty to bargain mandated by the Federal Labor-Management Relations Act, 5 U.S.C. §§ 7101 *et seq.*, does not extend to proposals inconsistent with management's exclusive right to direct employees and assign work. *Id.* at § 7106(a)(2)(A) and (B). A union may negotiate, however, over the "procedures" to be observed by management in the exercise of its reserved authority. *Id.* at § 7106(b)(2). While the union characterizes each of its proposals as "procedural," the FLRA found potential in each for impermissible interference with management prerogatives. We conclude that the FLRA's rulings rest on a rational basis with respect to each proposal.[3] We

1. A "critical element" is that component of an employee's job which is of such importance that failure to meet the minimum performance standard established by management requires remedial action, including removal. A "performance standard" is a quantitative measure of the minimum level of performance required to satisfy a given critical element. 5 C.F.R. § 430.202 (1983).

2. The union's original FLRA appeal included three other proposals which it does not pursue here. Presently at issue are the following portions of Union Proposal 2:

"The employer and the union agree that the following standards and procedures shall be used in drawing up critical elements....

(b) Critical elements shall only be elements which are in fact critical to the performance of the job.....

(d) Critical elements shall be mutually exclusive and explicitly defined. Critical elements shall not be defined or applied in a manner to be at cross purposes with each other....

(f) The line between unacceptable and minimally acceptable performance shall be defined precisely and distinguished.

(g) Critical elements, after full negotiation as referred to in Section 4 above, will be published in the position description of each employee. This information shall be supplied to each employee in his/her current position and at the time of transfer or promotion to a different position.

(h) Employees shall receive copies of the critical elements of all supervisors in their chain of command. Critical elements will be listed in order of priority in the position description. This information shall be supplied to each employee in his/her current position and at the time of transfer or promotion to a different position. The employer agrees to supply the union with copies, free of charge, of the critical elements for each supervisory or managerial position within the agency, once a year."

3. The Act, 5 U.S.C. § 7123(c), incorporates the APA's standard of review. Accordingly, this court may set aside the FLRA's findings only if "arbitrary, capricious, an abuse of discretion, ... otherwise not in accordance with laws" or in excess of statutory jurisdiction or authority. 5 U.S.C. § 706(2)(A) and (C)(APA). As the Supreme Court has noted, the FLRA is entitled to

accordingly affirm the decision of the FLRA.

*Proposals 2(b), 2(d), and 2(f)*

■ It is undisputed that the designation of "critical elements" and "performance standards" is exclusively consigned to management as a necessary corollary of its statutory right to assign work and direct employees. *Nat'l Treasury Employees Union and Dep't of the Treasury, Bureau of the Public Debt*, 3 FLRA 769 (1981), *aff'd sub nom. National Treasury Employees Union v. FLRA*, 691 F.2d 553 (D.C. Cir.1982). While the FLRA concedes that none of these subsections would necessarily designate critical elements or specify performance standards, it nevertheless contends that each would have the effect of directly interfering with management's exclusive statutory discretion in this area. We agree.

■ Although the Union is correct in observing that none of these proposals dictates the *precise* content or contours of a critical element or a performance standard, they nevertheless restrict agency discretion by mandating *some* substantive criteria for the establishment of critical elements (or, in the case of proposal 2(f), performance standards). The Union's position fails to recognize that a given critical element or performance standard may be the sum of a number of discrete criteria, and that the statute reserves for management not simply specification of the whole, but also determination of its constituent parts.[4] Nor is the reasonableness of these proposals the issue; to specify any criterion, however reasonable, is to invade management's exclusive statutory preserve.

The Union argues that its proposals no more intrude upon management prerogatives than proposals requiring equity or fairness in performance standards, the neg-

otiability of which the FLRA has sustained. *See American Federation of Government Employees, AFL–CIO, Local 32, and Office of Personnel Management, Washington, D.C.*, 3 FLRA 783 (1980). Reliance upon *Local 32*, however, is misplaced. There, the FLRA upheld the negotiability of a proposal providing that "[a]ll performance standards will be fair and equitable.... An employee who believes a standard does not meet the above criteria may grieve under the procedures [specified]." *Id.* at 789. The FLRA expressly cautioned that its decision was based on a reading of the proposal as a whole. So construed, the Authority noted that the proposal

> merely would establish a general, non-quantitative requirement by which the *application* of critical elements and performance standards established by management may subsequently be evaluated *in a grievance* by an employee who believes that he has been adversely affected by the application of management's performance standard to him.... [R]eview by an arbitrator would not, contrary to the Agency's allegations, preclude the Agency from initially determining the content of the standard, nor would it result in the substitution of the arbitrator's judgment for that of the Agency and the setting of a new standard; it would simply determine if the standard established by management *as applied to the grievant* complied with the 'fair and equitable ...' requirements of the parties' agreement.

*Id.* at 792 (emphasis added).

By contrast, the proposals presently at issue do not arise in the context of proposed grievance procedures, nor can they fairly be limited to the manner in which management standards are applied to em-

---

"considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted).

4. While the Union correctly insists that "none of the proposals at issue here establish[s] the content of critical elements or performance standards," each one conditions the content by specifying criteria to which management must conform.

ployees.[5] Each proposal conditions the content of standards consigned to management discretion and, as a result, is beyond the duty to bargain. If incorporated into a collective bargaining agreement, each proposal would also invite an arbitrator to substitute his or her judgment for management's. Unlike the purely procedural review of management's *application* of its own critical elements permitted by *Local 32*, review under 2(b) would necessitate substantive evaluation of whether those elements specified by management were "in fact" critical to job performance. Proposals 2(d) and (f) invite similar second-guessing by an arbitrator in areas reserved, by statute, for exclusive managerial discretion.

Although the Union consistently characterizes its proposals as "procedural,"[6] each specifies an extra-statutory, however reasonable, criterion to which management's otherwise unfettered discretion would have to comply. Each invites an arbitrator's independent evaluation of managerial designations on the basis of these criteria. As a result, the FLRA reasonably concluded that the practical impact of these proposals would be to interfere with the prerogative to designate critical elements and performance standards expressly reserved to management by statute.

### Proposal 2(g)

■ Proposal 2(g) incorporates a prior union proposal which would have required management "to fully negotiate all critical elements with the union prior to implementation." The FLRA properly found this proposal outside management's duty to bargain, and the Union does not contest this decision. Instead, it argues that if the offending clause is severed, the remainder of 2(g) would be negotiable. The Union urges that we find that the FLRA erred in failing to sever.

Even if the balance of 2(g) were negotiable, which we need not decide, we would be unable to entertain the Union's severability argument. "No objection that has not been urged before the Authority [*i.e.*, the FLRA] ... shall be considered by the court, unless the failure or neglect to urge the objection is excused by extraordinary circumstances." 5 U.S.C. § 7123(c); *Dep't of Treasury v. FLRA*, 707 F.2d 574 (D.C. Cir.1983). The Union does not contend that it did, in fact, request the FLRA to rule on the negotiability of 2(g) absent the offending reference, nor does it plead "extraordinary circumstances." Accordingly, the FLRA reasonably refused to find proposal 2(g) negotiable—presented, as it was, in its entirety.

### Proposal 2(h)

■ Finally, the Union contends that "critical elements in the job of supervisor unquestionably have an impact on the working conditions of all bargaining unit employees," and seeks to negotiate access to such information. In response, the FLRA held that information pertaining to the appraisal of supervisors is outside the duty to bargain since such information does not concern the conditions of employment of bargaining unit employees. Although the decisions relied upon by the FLRA are distinguishable from the case at hand,[7] we defer to the FLRA's reasonable

---

**5.** While *Public Debt, supra,* held that management's right to direct employees and assign work includes the exclusive authority to establish critical elements and performance standards, the decision also acknowledged that an agency has a duty to bargain under 5 U.S.C. § 7106(b)(3) on appropriate arrangements for employees adversely affected by management's exercise of that authority. The FLRA relied on that duty in broadly construing the proposal at issue in *Local 32. Local 32*, 3 FLRA at 791–92.

**6.** The characterization is, of course, irrelevant. As this court has cautioned, "unions [may] use procedural language in framing proposals, the

impact of which would be primarily substantive." *Navy Public Works Center v. FLRA*, 678 F.2d 97, 99 (9th Cir.1982).

**7.** In both *American Federation of Government Employees, National Council of EEOC Locals No. 216, AFL–CIO and Equal Employment Opportunity Commission, Washington, D.C.*, 3 FLRA 504 (1980), and *National Association of Government Employees, Local R7–23 and Headquarters, 375th Air Base Group, Scott Air Force Base (MAC), Illinois*, 7 FLRA 736 (1982), the FLRA rejected union proposals which would have permitted employees actually to participate in the periodic assessment of supervisory personnel.

construction of the Act that access to supervisory critical elements lies outside the duty to bargain.

AFFIRMED.

By contrast, the Union here simply seeks access to management's own general standards of assessment.