**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1931, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 85–7623.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 1986.

Decided Oct. 20, 1986.

Stuart A. Kirsch, American Fed. of Government Emp., College Park, Ga., for petitioner.

Ruth Peters, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent.

Before MERRILL, WIGGINS, and NOONAN, Circuit Judges.

WIGGINS, Circuit Judge:

American Federation of Government Employees, Local 1931 (Union) seeks review of an adverse decision of the Federal Labor Relations Authority (FLRA). The Union represents employees at the Concord Naval Weapons Station (Station). After the Station refused to bargain on one of the Union's collective bargaining proposals, the Union petitioned the FLRA for a determination of negotiability. The FLRA found the Union's proposal nonnegotiable and dismissed the petition. The Union filed a petition in this court seeking review of the FLRA decision. We have jurisdiction under 5 U.S.C. § 7123.

## STATUTORY BACKGROUND

The Federal Labor-Management Relations Statute (Act), as amended, 5 U.S.C. §§ 7101–7135 (1982 and Supp. II 1984), requires that federal agencies and employee unions bargain in good faith to arrive at a collective bargaining agreement. 5 U.S.C. § 7114(a)(4). However, a federal agency's duty to bargain is limited by 5 U.S.C. § 7106(a)(1), which provides that certain management decisions, including decisions relating to the internal security practices of the agency, are nonnegotiable. Section 7106(a) is in turn limited by section 7106(b), which provides that a union may bargain with a federal agency over the procedures the agency will use in exercising its reserved management authority under section 7106(a).[1]

---

1. 5 U.S.C. § 7106 provides in pertinent part:
    (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
        (1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency....

    ....
        (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
    ....
    (2) procedures which management officials of the agency will observe in exercising any authority under this section....

## FACTS

In August 1983, the Department of Defense issued a directive on the subject of "Drunk and Drugged Driving by DOD Personnel" (directive). In January 1984, the Station notified the Union that it was implementing the directive. The Station's implementing memorandum, in accordance with the directive, provides procedures for the temporary suspension of on-station driving privileges upon an individual's refusal to take a sobriety test or upon receipt by the Station of an arrest report or other official documentation of apprehension for intoxicated driving.

Under the procedures outlined in the memorandum, the Station's security officer must notify the individual of the preliminary suspension. That notice must include the arrest report and must state that a one-year suspension may be imposed upon conviction or other action indicating guilt, that the individual may request a hearing within five days to contest the preliminary suspension, and that if no hearing is requested, the preliminary suspension will continue. An individual who requests a hearing must be given one within ten days of the request. If the hearing officer determines that there was probable cause for the apprehension, the suspension will be continued. If not, it will be vacated. If the individual is convicted or similar action results, a one-year suspension of his or her on-station driving privileges will be imposed. If the person is acquitted, the preliminary suspension will be vacated.

In response to the Station's notice, the Union submitted a two-part collective bargaining proposal. The Union proposed (1) that employees arrested for intoxicated driving be allowed to maintain their driving privileges until they are convicted by a civilian court and (2) that suspensions of employees who refuse to take a sobriety test be in accordance with California law and any disciplinary action taken for such refusal be no greater than that imposed by the state court.

The Station concluded that expeditious suspension of driving privileges on its premises based on evidence of intoxicated driving is an internal security practice and that the Union's proposal was nonnegotiable under section 7106(a)(1) because it conflicted with that practice. The Union, pursuant to 5 U.S.C. § 7117, petitioned the FLRA for a negotiability determination. The FLRA determined that the Union's proposal was nonnegotiable. It noted that the Union's proposal, if adopted, would restrict the agency's right to determine policies and take actions to secure or safeguard its personnel and physical property. The Union petitioned this court for review.

## STANDARD OF REVIEW

The Act, 5 U.S.C. § 7123(c), provides that judicial review of FLRA orders shall be in accordance with 5 U.S.C. § 706, which provides that agency action shall be set aside only if " 'arbitrary, capricious, an abuse of discretion, ... otherwise not in accordance with laws' or in excess of statutory jurisdiction or authority. 5 U.S.C. § 706(2)(A) and (C)(APA)." *National Treasury Employees Union v. FLRA*, 767 F.2d 1315, 1317 n. 3 (9th Cir.1985). The FLRA is entitled to "considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149-50, 10 L.Ed.2d 308 (1963)). However, we "cannot rubber-stamp a decision that fails to give a proper construction of a pertinent statute or that frustrates an underlying congressional policy." *Defense Language Institute v. FLRA*, 767 F.2d 1398, 1401 (9th Cir.1985), *cert. dismissed,* — U.S. ——, 106 S.Ct. 2004, 90 L.Ed.2d 647 (1986).

## DISCUSSION

At the outset, we note that the FLRA based its decision in this case entirely on its prior decision in *Defense Logistics Council of American Federation of Government Employees Locals and Defense Logistics*

*Agency,* 20 F.L.R.A. 166 (1985),[2] decided the same day. The FLRA noted that the Union's proposal in this case is to the same effect as the proposals in *Defense Logistics Council.* We therefore rely primarily on *Defense Logistics Council* for the FLRA's reasoning in this case.

### A. *Section 7106 Arguments*

The Union makes two primary . arguments in support of its contention that its proposal is negotiable. It first argues that its proposal does not implicate an internal security practice of the Station and that section 7106 is therefore completely inapplicable. In the alternative, the Union argues that even if section 7106 is applicable, its proposal concerns negotiable procedures under section 7106(b). We will address each of these arguments in turn.

#### 1. *Applicability of Section 7106*

■ The FLRA has held in the past that an agency's right to determine its internal security practices free from collective bargaining includes the right to make decisions and take actions designed to safeguard its personnel and physical property. *See American Federation of Government Employees and Office of Personnel Management,* 16 F.L.R.A. 40, 40 (1984); *American Federation of Government Employees and Internal Revenue Service,* 8 F.L.R.A. 347, 362 (1982). In this case, the FLRA determined that the Station's policy of expeditious suspension of driving privileges is designed to prevent harm to the Station's personnel and property and is therefore an internal security practice. This conclusion is a reasonable interpretation of the Act. The great danger posed to persons and property by those who drive while intoxicated is well known. Suspending the driving privileges of those who are

apprehended for so driving is clearly a method to protect persons and property from the dangers posed by such drivers.

We reject the Union's argument that the FLRA's determination in this case conflicts with its prior decisions. None of the FLRA decisions cited by the Union is on point. Simply because the FLRA has held that military bases' parking programs [3] and procedures for processing parking and traffic tickets [4] are negotiable, it is not required to determine that all agency decisions regarding driving privileges on agency premises are negotiable. Parking and processing of tickets are not activities clearly designed to protect people and property. Suspension of driving privileges for drunk or drugged driving, on the other hand, clearly is such an activity.

The Union's reliance on *American Federation of Government Employees, AFL–CIO, Local 32 and Office of Personnel Management,* 14 F.L.R.A. 6 (1984), is also misplaced. In that case, the FLRA held a union proposal that "[m]anagement shall provide adequate security to all employees" to be within the duty to bargain. In so holding, the FLRA noted that the proposal prescribed only "adequate security" and that it left "to the Agency's sole discretion decisions as to implementation of the contractual standard." *Id.* at 9. The proposal in this case does not leave implementation decisions to the Station's discretion. Rather, it prescribes exactly how the Station will implement its policy.

#### 2. *Nonnegotiable Procedure or Negotiable Substantive Right*

Having determined that the FLRA reasonably concluded that expeditious suspension of on-station driving privileges is an internal security practice, our next inquiry is whether the FLRA's conclusion that the

---

**2.** *Defense Logistics Council* involves the same Department of Defense directive as this case but a different union's proposals in response to implementation of that directive.

**3.** *Harry Diamond Laboratories and American Federation of Government Employees, Local 2, AFL–CIO,* 15 F.L.R.A. 216, 217 (1984).

**4.** *Department of the Air Force and American Federation of Government Employees, Local 2609, AFL–CIO,* 2 F.L.R.A. 12, 13 (1979).

Union's proposal is not a section 7106(b) negotiable procedure is a reasonable interpretation of the Act. The principal dispute between the parties on this issue is whether the FLRA should have applied its "prevent from acting at all" test or its "directly interfere" test in assessing the negotiability of the Union's proposal. As we have noted elsewhere, it is often difficult to determine whether a collective bargaining proposal concerns a negotiable procedure under section 7106(b) or a nonnegotiable substantive right under section 7106(a). *See Defense Language Institute*, 767 F.2d at 1400. The FLRA has handled this problem in many of its decisions by applying two distinct tests to classify as negotiable or nonnegotiable union proposals that appear on their face to concern procedures.

■ Under the FLRA analysis, proposals that are cast in procedural language but are close to the border between procedure and substance are nonnegotiable if they would "directly interfere" with the agency's right to act in an area of reserved management rights. On the other hand, proposals that are more clearly procedural are nonnegotiable only if they would prevent the agency from "acting at all" in an area of reserved management rights. *See id.* at 1400 n. 3; *Navy Public Works Center v. FLRA*, 678 F.2d 97, 100 n. 3 (9th Cir.1982). Given the difficult task of distinguishing procedure from substance in the context of a section 7106 negotiability decision, the FLRA's two-test approach is a reasonable interpretation of the Act. That approach provides a logical and reasoned method for determining which union proposals interfere with an agency's reserved management rights and which merely concern the methods an agency will employ in exercising its management rights. *See Department of Defense v. FLRA*, 659 F.2d 1140, 1159 (D.C.Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

■ In this case, the FLRA determined that the Union's proposal "would conflict with a preventive measure taken by the Agency to guard against harm to its prop-

erty and personnel and, hence, would *directly interfere* with the Agency's right to determine its internal security practices." *Defense Logistics Council*, 20 F.L.R.A. at 168 (emphasis added). The Union argues that the FLRA erred in applying the "directly interfere" test to its proposal rather than the "prevent from acting at all" test. The FLRA rejected the Union's argument. It determined that the Union's proposal "does not involve merely a procedure which management will observe in exercising the reserved right in question but constitutes an improper attempt to negotiate with respect to the decision itself." *Defense Logistics Council*, 20 F.L.R.A. at 168.

We conclude that the FLRA's decision on this issue is reasoned and supportable. The Station has decided to protect its personnel and property by expeditiously suspending the on-station driving privileges of individuals who are apprehended for intoxicated driving or who refuse to take sobriety tests. The Union's proposal implicates the substance of this policy. If adopted, the proposal would prohibit the expeditious suspension of driving privileges.

### B. *Petitioner's Other Arguments*

■ The Union also argues that the Station's expeditious suspension of driving privileges on Station property infringes California's authority to regulate health and safety and violates the employees' due process rights. Neither of these arguments is before us on this appeal. We have jurisdiction only over the question determined in the FLRA proceeding. 5 U.S.C. § 7123(c). The only question determined in the FLRA proceeding under review is the negotiability of the Union's proposal. Even if we did have jurisdiction, the Union's health and safety argument clearly has no merit. The federal government may control its property free from regulation by the states unless Congress declares that the property is subject to state regulation. *Hancock v. Train*, 426 U.S. 167, 178–79, 96 S.Ct. 2006, 2012–13, 48 L.Ed.2d 555 (1976). Therefore, California's right to license drivers is not infringed by

the Station's suspension of driving privileges on the Station's property.

### CONCLUSION

The FLRA's decision that the Union's proposal is nonnegotiable is a reasonable interpretation of the Act. It is not an arbitrary or capricious decision. The petition for review is therefore DENIED.