BUREAU OF LAND MANAGEMENT, LAKEVIEW DISTRICT OFFICE, LAKEVIEW, OREGON, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

and

National Federation of Federal Employees, Local 642, Intervenor.

FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,

v.

BUREAU OF LAND MANAGEMENT, LAKEVIEW DISTRICT OFFICE, LAKEVIEW, OREGON, Respondent.

Nos. 87-7382, 87-7449.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1988.

Decided Dec. 27, 1988.

Robert K. Rasmussen, Civ. Div., Dept. of Justice, Washington, D.C., for petitioner/cross-respondent.

Jill A. Griffin, Federal Labor Relations Authority, Washington, D.C., for respondent/cross-petitioner.

Alice L. Bodley, Nat. Federation of Federal Employees, Washington, D.C., for intervenor.

Before SCHROEDER, PREGERSON and LEAVY, Circuit Judges.

SCHROEDER, Circuit Judge:

The Bureau of Land Management petitions for review of a negotiability decision by the Federal Labor Relations Authority (FLRA). The decision is reported as *National Federation of Federal Employees, Local 642 and Bureau of Land Management, Lakeview District Office, Lakeview, Oregon*, 27 F.L.R.A. 862 (1987).

Congress created the FLRA to administer the Federal Labor-Management Relations Act (FLMRA), 5 U.S.C. §§ 7101-35 (1982 & Supp. IV 1986). *See* 5 U.S.C. § 7105. That statute requires all federal agencies to bargain in good faith with unions, 5 U.S.C. § 7117, and empowers the FLRA to adjudicate disputes regarding such good faith bargaining. 5 U.S.C. § 7105. We have jurisdiction to review the FLRA decision pursuant to 5 U.S.C. § 7123. Section 7123(c) directs us to review the FLRA's decision in accord with 5 U.S.C. § 706 (1982), which provides that we set aside the agency action only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or in excess of statutory jurisdiction or authority. *See American Fed'n of Gov't Employees v. F.L.R.A.*, 802 F.2d 1159, 1161 (9th Cir.1986).

The order under review would require the BLM to bargain over all aspects of a proposal submitted in 1986 by the National Federation of Federal Employees Union. The FLRA cross-petitions for enforcement

of its order. We affirm the FLRA's decision and enforce its order.

The Union proposal in question was designed to initiate bargaining over an alternative work schedule (AWS) as authorized by the Flexible and Compressed Work Schedules Act (FCWSA), 5 U.S.C. §§ 6120–33 (1982 & Supp. IV 1986). Congress originally enacted FCWSA as a temporary experiment in improving the efficiency of federal government service. *See* Pub.L. No. 97–221, 96 Stat. 227 (1982). After success with the experimental program, FCWSA was made permanent in 1985. Pub.L. No. 99–190, 99 Stat. 1324 (1985).

The purpose of FCWSA is to promote federal government productivity and service to the public by allowing employees to select work schedules other than the basic eight-hour, five-day work week. 5 U.S.C. § 6120. It authorizes government agencies to establish a "flexible schedule" in which all employees are present during certain "core hours" of the day but have an option

as to which other hours of the day they will work. 5 U.S.C. § 6122. Employees may also earn "credit hours" by working longer than their normal work day, using those credit hours to offset the length of a different work day. *Id.* An agency may also establish a "compressed schedule" in which employees work longer hours but fewer days within any two-week period. 5 U.S.C. § 6127. The statute anticipates that in the case of employees represented by a union, an AWS will be the subject of collective bargaining.[1] 5 U.S.C. § 6130.

In this case the Union submitted a comprehensive AWS plan to the Bureau of Land Management Lakeview District Office (BLM), to afford the office workers AWS options. The proposal incorporated options already available to field operations employees in the district. The BLM took exception to two sections of Proposal 3, which detailed the AWS schedules. The full text of proposal 3 is set forth in the margin.[2]

---

1. The statute provides in 5 U.S.C. § 6130(a):
   (1) In the case of employees in a union represented by an exclusive representative, any flexible or compressed work schedule, and the establishment and termination of any such schedule, shall be subject to the provisions of this subchapter and the terms of a collective bargaining agreement between the agency and the exclusive representative.
   (2) Employees within a unit represented by an exclusive representative shall not be included within any program under this subchapter except to the extent expressly provided under a collective bargaining agreement between the agency and the exclusive representative.

2. Proposal 3 reads:
   3.
   *Alternative Work Schedules (AWS).* As authorized in PL 99–196, December 23, 1985, the following schedules may be used:
   *Flexitour:* (Scheduled tour of duty) Five, 8–hour days/week. Employee preselects arrival time. Must account for core hours.
   *Gliding.* (Flexible tour of duty) Five, 8–hour days/week. Employee may vary arrival time. Must account for core hours.
   *Variable Day (40 hours per week):* Flexible tour of duty. Must work 40 hours/week. Employee may vary the number of hours/day. Must account for core hours.
   *Variable Day (80 hours per pay period):* Flexible tour of duty. Must work 80 hours/pay period. Employee may vary the number of

hours/day and the number of days/week. Must account for core hours.
*5–4/9* Compressed tour of duty. Employee must work 8, 9–hour days and 1, 8 hour day.
*4–10* Compressed tour of duty. Employee must work 4, 10–hour days/week.
a. Core hours will be 9:30 am to 11:30 am and 12:30 pm to 2:30 pm, Monday through Friday.
b. LDM (Lakeview District Manager) will utilize AWS to improve work force efficiency, to increase productivity and service to the public, and to reduce costs.
c. All employees have the right to apply for any approved unit AWS consistent with the work unit objectives. Management has the authority to approve work schedules for individual employees and/or groups of employees, based on work objectives of the unit.
d. Work schedules shall normally not begin prior to 6 a.m. nor extend beyond 6 p.m. Exceptions based on requirements of the nature of the work (i.e. field work or laboratory work) may be approved by the appropriate manager, in consultation with the local union.
e. Full-time employees must work at least 4 days per week, regardless of AWS schedule in effect. Leave days and holidays are considered workdays.
f. Credit hours may not be carried over from one pay period to another.
g. Unit managers may impose additional constraints, consistent with the job mission of the unit, where necessary to accomplish the work objective of the unit.

The BLM found fault with sections c and g.[3] It claimed they violated management prerogatives mandated by federal law. Those sections provide:

(c) All employees have the right to apply for any approved unit AWS consistent with the work unit objectives. Management has the authority to approve work schedules for individual employees and/or groups of employees, based on work objectives of the unit.

(g) Unit managers may impose additional constraints, consistent with the job mission of the unit, where necessary to accomplish the work objective of the unit.

While these two sections would seem to be grants of management authority rather than restrictions on it, the BLM views these sections as being restrictive to management rather than expansive. The BLM interprets these sections as limiting the power of management to deny an employee's work schedule request to those situations where the work objectives of the unit are being damaged. The BLM further believes that these sections imply the availability of grievance and arbitration upon the denial of an employee's schedule request.

The BLM refused to negotiate with the Union over the proposal, and the Union filed an unfair labor practice charge with the FLRA under 5 U.S.C. § 7116(a)(5). The FLRA held a hearing pursuant to 5 U.S.C. § 7105(a)(2), resulting in the decision and order below.

The BLM argued before the FLRA that the proposal sections in issue were nonnegotiable because they violated the "management rights" section of FLMRA, 5 U.S.C. § 7106, which grants management the final authority in deciding how work should be apportioned to employees.[4] The BLM also argued that the sections violated a management rights provision within FCWSA, which states "an [AWS] election by an employee ... shall be subject to limitations generally prescribed to ensure that the duties and requirements of the employee's position are fulfilled." 5 U.S.C. § 6122(a).

The FLRA responded to and defeated each of the BLM's challenges separately. First, the FLRA did not agree with the BLM that the challenged sections were nonnegotiable because they violated management rights protected by FLMRA. It reasoned that application of FLMRA's "management rights" would conflict with the flexible time policies of FCWSA. The agency relied on an earlier decision which held all aspects of an AWS plan fully negotiable, *American Federation of Government Employees, Local 1934 and Department of the Air Force, 3415 ABG, Lowry AFB Colorado*, 23 F.L.R.A. 872 (1986). The FLRA explained the effects of that decision:

[Because] alternate work schedules for bargaining unit employees are "fully negotiable" within the limits set by [FCWSA], there are no issues pertaining to the negotiability of those schedules which the authority will consider under

---

h. Employees approved to use 5–4/9 or 4–10 may request specific days for their "short day and/or their off" day. Based on work demands and the request of the employee, the supervisor may approve a change in the scheduled "off" day during a pay period.

i. If an employee is denied AWS the LDM (Lakeview District Manager) will provide written notice detailing the reasons for denial within 7 days.

3. The BLM's objection to a clause in Proposal 2 requiring advance written notice before management could change an employee's tour or shift was decided by the FLRA favorably to the union. This decision was not appealed and is not considered here.

4. The "management rights" section of FLMRA, 5 U.S.C. § 7106, provides in relevant part:

(a) ... [N]othing in this chapter shall affect the authority of any management official of any agency—

(1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted....

[FLMRA], insofar as those issues concern an alleged conflict with [FLMRA]. There remains a limited range of issues bearing on the negotiation of alternate work schedule proposals which the authority may process under the procedures of [FLMRA]—namely, whether a proposed work schedule conflicts with [FCWSA] itself or with other laws superseding [FCWSA].

27 F.L.R.A. at 867. In other words, the FLRA held that limitations on management rights imposed by an AWS are to be judged against the standards of FCWSA rather than those of FLMRA. Objections to an AWS as directly violating FLMRA were therefore not properly before the FLRA.

Having disposed of the FLMRA analysis, the FLRA turned to an analysis under FWCSA, testing the contested proposal sections against the FWCSA management rights clause in 5 U.S.C. § 6122(a). The FLRA found that the contested sections complied with that provision:

We find that the proposal does not conflict with 5 U.S.C. § 6122(a). Section 6122(a) provides that employees' election of arrival and departure times under a flexible schedule is subject to the Agency's authority to ensure that the duties of their positions are fulfilled. None of the sections of the proposal which provide for flexible schedules establishes or guarantees to employees any particular arrival or departure times. To the contrary, all of the alternate work schedules provided in Proposal 3, flexible and compressed work schedules alike, are subject to management approval. The proposal specifically states that "[m]anagement has the authority to approve work schedules for individual employees and/or groups of employees, based on work objectives of the unit." The Union explains that "management retains its full authority to determine the work objectives of any given unit and to disapprove any schedule that does not allow those objectives to be met."

27 F.L.R.A. at 867–68.

The BLM argues in this review proceeding that despite passage of FCWSA, management retains at least some of the prerogatives it enjoyed under FLMRA before FCWSA. Although the BLM concedes that FCWSA makes the overall framework of an AWS plan negotiable, it asserts that management prerogatives regarding the specific details of the plan's operation are still judged by FLMRA and have never been subsumed under FCWSA. In support of this, it interprets the language of the FCWSA section on collective bargaining, 5 U.S.C. § 6130, as referring only to the implementation and termination of an overall AWS plan and not to the negotiability of specific details of such a plan.

The difficulty with the BLM's position is that the very purpose of FCWSA was to limit management's total control over work hours and to give employees some choice. The history of the statute reflects Congress' belief that the gains from adoption of bargainable alternative work schedules outweigh the possible problems from diminution in management control.

The result of the experimental program showed that the use of alternative work schedules can be beneficial to all concerned when the schedules are used properly. The most important consideration in the utilization of these schedules is whether service to the public is being harmed in any significant way.... If government managers find that their unit's mission is not being effectively accomplished due to scheduling arrangements of their employees, they need the flexibility to alter these arrangements within the confines of certain basic employee protections.

On the other hand, one of the most protected rights gained by the organized labor movement is the inviolability of the collective bargaining process. Once an item is deemed a bargainable issue, it takes an extraordinary situation to show that bargaining itself is not in the public interest.... In light of the fact that alternative work schedules under the experimental program were bargainable, the question becomes "Has bargaining over alternative work schedules hindered the effective management of government and thereby reduced service to the pub-

lic?" The Committee finds the answer to be generally no. The Committee finds that in certain situations alternative work schedules do not and will not work. The remedy for such situations lies in building standards in the law for when a particular schedule is inappropriate, not encroaching into the sphere of negotiation. The Committee reasserts the position that the use of alternative work schedules is negotiable.

S.Rep. No. 365, 97th Cong., 2d Sess. 4–5 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 565, 566–67.

Of course, Congress did not with FCWSA wholly abandon the concept of management control over employee work assignments. Section 6122(a) still requires that employees' AWS choices comport with limitations ensuring good work performance. These generally prescribed limitations ensure that an AWS does not harm the very productivity and service level it was implemented to enhance. The provision for both employee freedoms and management checks on those freedoms demonstrates that Congress intended FCWSA to be a separate and self-sufficient piece of legislation. The BLM cannot successfully rely upon the language of the FLMRA provision stating that "nothing in this chapter" shall affect management authority; FCWSA is not in the same chapter with FLMRA.

We find no support for the BLM's position that Congress intended to draw a distinction between, on the one hand, the overall aspects of an AWS plan obviously negotiable under FCWSA, and on the other, operational details of that same plan whose negotiability would depend on some other legislation unnamed in the statute. The statute does not draw such a distinction; to do so would be inconsistent with the statute's purpose. In order for employees to have the flexibility and choice envisioned by the statute, both the overall contours of the employees' available choices (what the BLM thinks of as the "work schedule"),

*and* the manner in which an individual's choice is exercised within those contours, must be subjects included within the terms of the collective bargaining agreement and hence negotiable.[5] We agree with the FLRA that nothing in the proposal violates section 6122(a) or otherwise removes the proposal from negotiability under FCWSA.

The BLM's petition for relief is DENIED. The petition of the FLRA for enforcement is GRANTED.

---

5. Other unions and agencies have already begun to submit their AWS plans, including details such as employee schedule request/denial procedures, to the FCWSA negotiation process.

*See, e.g., Department of Energy and National Treasury Employees Union,* 85 F.S.I.P. 105 (1985) at p. 2.