## FORT BRAGG ASSOCIATION OF EDUCATORS, NEA, Petitioner,

v.

## FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 87–1823.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1989.

Decided March 21, 1989.

Richard J. Hirn, Washington, D.C., for petitioner.

Pamela P. Johnson, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Federal Labor Relations Authority, Washington, D.C., was on the brief, for respondent.

Ruth E. Peters, Arthur A. Horowitz, and James F. Blandford, Attys., Federal Labor Relations Authority, Washington, D.C., also entered appearances for respondent.

Before MIKVA and RUTH BADER GINSBURG, Circuit Judges, and OBERDORFER, District Judge.[*]

---

[*] Of the United States District Court for the District of Columbia Circuit, sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

RUTH BADER GINSBURG, Circuit Judge:

This case involves a teachers' union collective bargaining proposal resisted as nonnegotiable by the Department of the Army. Specifically, the union proposed that teachers in schools for dependents of Army personnel not be required to sign personal service contracts as a condition of employment. The Federal Labor Relations Authority (FLRA or Authority), holding for the Army, declared the union's proposal inconsistent with the Army's right to hire, a right insulated against bargaining by the Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7106(a)(2)(A) (1982).

We conclude that the union's proposal entails no substantive interference with the Army's hiring prerogatives and therefore is negotiable. We also find persuasive the holding of our sister circuit that the Army's use of personal service contracts in the hiring of teachers violates a Federal Acquisition Regulation. *See West Point Elementary School Teachers Ass'n v. FLRA*, 855 F.2d 936, 940–41 (2d Cir.1988). Accordingly, we grant the petition for review, reverse the decision of the FLRA, and remand the case to the Authority with instructions to enter an appropriate bargaining order.

I.

The Department of the Army operates six elementary and two middle schools at Fort Bragg, North Carolina, for the education of approximately four thousand dependents of Army personnel.[1] Congress authorized the operation of such schools in section 6 of the Act of September 30, 1950, 20 U.S.C. § 241 (1982), to provide education for military dependents who lacked access to local public schools. Employees of these "section 6" schools may be hired, and the terms and conditions of their employment set, without regard to the Civil Service Act

1. The Army operates "dependents schools" at eight other bases in the United States. The Navy, Air Force, and Marine Corps run similar schools on several of their U.S. bases. *See* Brief for Petitioner at 2.

and several other laws applicable to civil servants. *Id.* § 241(a).[2]

The Fort Bragg Association of Educators (the union) represents approximately three hundred and fifty teachers and other professional employees of the eight Fort Bragg schools. *See* Joint Appendix (J.A.) at 1, 75. In 1981, the union negotiated a collective bargaining agreement with the Army. Modified in 1982 and renewed for two years in 1984, the agreement granted teachers "career status," or tenure, after a three-year probationary period. *See Agreement Between the Fort Bragg Schools and the Fort Bragg Unit of the North Carolina Ass'n of Educators/NEA* art. 15, § 4 (Addendum to Brief for Petitioner). Tenured teachers, the agreement provided, could not be dismissed except for "just cause," *id.,* and were given preference over probationary employees during reductions in force, *id.* art. 14, § 5(d).

Despite this agreement, the Army has constantly required its section 6 employees to sign personal service contracts (PSCs) annually as a condition of employment. *See* 32 C.F.R. § 594.5602 (1988). The PSCs establish the terms and conditions of employment for each employee, including pay, leave, termination, and grievance resolution. *See* J.A. at 54–62 (sample PSC). The contracts are renewed each year with a salary modification, *see id.* at 63–64 (sample PSC modification), and a basic contract is issued every three years.

In 1985, the Army notified the union that it believed the PSCs superseded the collective bargaining agreement; the superintendent of the Fort Bragg schools accordingly declared the tenure and reduction in force provisions of the agreement null and void. *See* J.A. at 73.[3] During negotiations for a new agreement in 1987, the union made the following proposal: "Unit employees will not be requested or required to enter into personal service contracts as a condition of their employment." *See Fort Bragg Ass'n of Educators, NEA and Department of the Army, Fort Bragg Schools,* 30 F.L.R.A. 508, 510 (1987). The Army refused to negotiate, however, and the union appealed to the FLRA.

The FLRA declared the union's proposal outside the Army's duty to bargain, holding that it interfered with the Army's right to hire, a "management right" safeguarded by the Federal Service Labor–Management Relations Statute (FSLMRS), 5 U.S.C. § 7106(a)(2)(A). *Fort Bragg,* 30 F.L.R.A. at 511. To explain this ruling, the Authority referred, without further elaboration, to its prior decision regarding an identical proposal: *West Point Elementary School Teachers Association, NEA and the United States Military Academy Elementary School, West Point, New York,* 29 F.L.R.A. 1531 (1987), *rev'd in part sub nom. West Point Elementary School Teachers Ass'n v. FLRA,* 855 F.2d 936 (2d Cir.1988). In *West Point,* the FLRA stated:

> We view the use of personal services contracts by the Agency to be inseparable from the decision to hire. [The union's proposal] prohibits the use of personal services contracts to hire employees, thereby requiring management to use some other appointment process. By prohibiting the Agency from using personal services contracts, [the proposal] constitutes a substantive rather than a procedural limitation on the Agency's

---

**2.** Section 6 provides:

[Dependents school] personnel may be employed and the compensation, tenure, leave, hours of work, and other incidents of the employment relationship may be fixed without regard to the Civil Service Act and rules and the following: (1) chapter 51 and subchapter III of chapter 53 of Title 5; (2) subchapter I of chapter 63 of Title 5; (3) sections 5504, 5541 to 5549, and 6101 of Title 5; (4) sections 1302(b), (c), 2108, 3305(b), 3306(a)(2), 3308 to 3318, 3319(b), 3320, 3351, 3363, 3364, 3501 to 3504, 7511, 7512, and 7701 of Title 5; and (5) chapter 43 of Title 5.

20 U.S.C. § 241(a).

**3.** The Army relied on a legal opinion of the Army Office of the Deputy Chief of Staff for Personnel, given after consultation with the Army Judge Advocate General; the opinion maintained that section 6 employees, because they are employed under PSCs, are subject to government contract law, which requires, *inter alia,* that all government contracts provide for dispute resolution procedures and termination clauses. Joint Appendix (J.A.) at 70–71.

right to hire and thus directly interferes with that right. *Id.* at 1534.[4] The FLRA emphasized, however, that "the content of personal services contracts cannot supersede collective bargaining agreement provisions lawfully negotiated pursuant to the Statute." *Id.* at 1533; *see also Fort Bragg,* 30 F.L.R.A. at 511 ("again emphasiz[ing] that the use of personal services contracts does not allow the Agency to circumvent its obligations under the [FSLMRS]").

The union petitioned this court for review of the FLRA's *Fort Bragg* decision.[5] In the interim, the Second Circuit reversed the Authority's decision regarding PSCs in *West Point. See West Point Elementary School Teachers Ass'n v. FLRA,* 855 F.2d 936, 940–41 (2d Cir.1988). That court held that the Army's use of PSCs violated a Federal Acquisition Regulation, 48 C.F.R. § 37.104(b) (1987), which prohibits the use of PSCs unless specifically authorized by statute; the union proposal therefore did not interfere with the Army's statutory right to hire "in accordance with applicable laws." *Id.* The union urges this court to follow the Second Circuit's lead. Alternatively, the union maintains that even if the Army's use of PSCs is lawful, the proposal to dispense with them entails no substantive interference with the Army's right to hire.

## II.

■ The FSLMRS imposes on both agencies and unions the duty to bargain in good faith over "conditions of employment," 5 U.S.C. § 7114(b)(2), which are defined as "personnel policies, practices, and matters ... affecting working conditions." *Id.* § 7103(a)(14). Among matters exempted from the duty to bargain are proposals that interfere with the agency's right to hire "in accordance with applicable laws." *Id.* § 7106(a)(2)(A). The *procedures* by which an agency exercises its hiring authority, however, are negotiable. *Id.* § 7106(b)(2).

We hold that the union's proposal fits the latter category. It does not address the substance of the Army's right to hire; instead, it concerns the manner in which the Army records and confirms the terms and conditions of employment. We recognize that this classification issue falls within the domain of the FLRA's expertise. The scope of our review is therefore narrow; the Authority's decision survives our scrutiny unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (1982) (applied specifically to FLRA decisions by *id.* § 7123(c)); *see Overseas Educ. Ass'n v. FLRA,* 858 F.2d 769, 771 (D.C.Cir. 1988). In light of the language and logic of the FLRA's own precedent, however, the Authority's judgment in this case defies rational explanation.

The FLRA has held nonnegotiable proposals that would interfere with an agency's discretion to determine whether to create a new position, *see National Ass'n of Gov't Employees, Local R1–109, AFL–CIO and Veterans Admin. Medical Center,*

---

**4.** In both *West Point* and *Fort Bragg,* the FLRA rejected the Army's assertions that the union's proposal interfered with the Army's rights to "determine the ... organization ... of the agency," "to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted." 5 U.S.C. § 7106(a)(1) & (2)(B); *see West Point,* 29 F.L.R.A. at 1533–34; *Fort Bragg,* 30 F.L.R.A. at 510–11. The FLRA determined that the Army's contentions were based on the erroneous assumption that section 6 employees are "independent contractors." Rather, the Authority held, they are "employees of the Government subject to all statutes pertaining to Government employment unless specifically exempted"; hence, "the Agency may not use personal services contracts to attempt to establish unilaterally conditions of employment in derogation of the statutory collective bargaining rights of these employees." *West Point,* 29 F.L.R.A. at 1533. The FLRA nevertheless found, on its own initiative, that the proposals in both cases were nonnegotiable because they conflicted with the Army's right to hire.

**5.** The FLRA had also found several union proposals concerning pay and leave negotiable. The Army petitioned for review of that part of the FLRA's decision in No. 88–1132, which was originally consolidated with the union's petition in No. 87–1823. We terminated the consolidation, however, and stayed further consideration of No. 88–1132 pending the decision of this court, sitting *en banc,* in *Department of Defense Dependents Schools v. FLRA,* No. 87–1733, et al. *See* Feb. 8, 1989 Order in Nos. 87–1823 & 88–1132.

*Newington, Conn.,* 26 F.L.R.A. 532, 533–34 (1987); whether to hire a specific individual, *see Service Employees' Int'l Union, Local 556, AFL–CIO and Department of the Navy, Marine Corps Exchange, Kaneohe Bay, Haw.,* 26 F.L.R.A. 801, 805 (1987) (holding that right to hire includes right to fire probationary employee because probationary period is essential to the determination whether to hire employee permanently); whether to fill certain jobs with particular types of employees, *see American Fed'n of Gov't Employees, AFL–CIO, Local 12 and Department of Labor,* 18 F.L.R.A. 418, 421 (1985) (holding nonnegotiable a proposal requiring agency to fill certain job vacancies with temporary employees); and whether to accord certain jobs special status, *see National Treasury Employees Union and IRS,* 2 F.L.R.A. 281, 283 (1979) (holding nonnegotiable a proposal requiring agency to fill certain percentages of job vacancies as "upward mobility positions"). The proposal in this case, however, would not similarly constrain or limit the Army's hiring authority.

The union's proposal simply provides that, regardless of the nature of the jobs the Army creates, whom it hires, and under what substantive conditions of employment, the Army may not record the terms of employment in PSCs. In its brief, the FLRA itself refers to PSCs as "[t]he vehicle … used by an agency to embody the terms of appointment" and "the memorializing of the act of hiring." Brief for the FLRA at 21; *see also American Fed'n of Gov't Employees, AFL–CIO, Local 1770 and the Department of the Army, Fort Bragg Dependents Schools,* 28 F.L.R.A. 493, 501 (1987) (characterizing PSCs as "nothing more than written statements of the conditions of employment under which employees would be hired"). In *West Point,* moreover, the Authority described PSCs as a "formal appointment *process*" by which the Army hires teachers and stated that the union's proposal to prohibit the use of PSCs would "requir[e] management to use some other appointment *process.*" 29 F.L.R.A. at 1533–34 (emphases added).

We find these descriptions telling. As they indicate, by prohibiting PSCs, the union's proposal would affect only the *proce-*

*dure* by which the Army records the terms of appointment and employment; eliminating PSCs would not add to, subtract from, or modify the *substance* of those terms. The Army is not required to use PSCs, *see AFGE, Local 1770,* 28 F.L.R.A. at 501 (citing *Fort Knox Teachers Ass'n and Board of Educ. of the Fort Knox Dependents Schools,* 27 F.L.R.A. 203 (1987)); it therefore can implement the same substantive terms of employment by other means. The collective bargaining agreement is the most obvious alternative. In fact, the FLRA's *West Point* decision stressed that the collective agreement trumped any contrary provisions in the PSCs:

> As we have held previously and reaffirm here, the Agency may not use personal services contracts to attempt to establish unilaterally conditions of employment in derogation of the statutory collective bargaining rights of those employees. Where employees subject to 20 U.S.C. § 241 are in a unit of exclusive recognition, the content of personal services contracts cannot supersede collective bargaining agreement provisions lawfully negotiated pursuant to the [FSLMRS].

29 F.L.R.A. at 1533. *See also Fort Bragg,* 30 F.L.R.A. at 511 ("[W]e again emphasize that the use of personal services contracts does not allow the Agency to circumvent its obligations under the [FSLMRS]."). The union thus can negate, by bargaining, substantive terms unilaterally placed in the PSCs. How then can a proposal to dispose of the vessel in which voided terms may remain lodged work to interfere substantively with the Army's right to hire? The FLRA offers no answer. Furthermore, substantive prescriptions that are outside the duty to bargain may be imposed by regulation. Notably, the Navy, Air Force, and Marine Corps do not use PSCs for their section 6 employees, *see* Brief for Petitioner at 4; presumably those armed services have not been disabled from exercising their right to hire, fully and effectively, by some other means. In short, given the existence of alternative methods of memorializing the terms of employment, we conclude that the union's proposal does not interfere substantively with the Army's right to hire.

We also find persuasive the Second Circuit's decision in *West Point* that the Army's use of PSCs for section 6 employees is unlawful, 855 F.2d at 940–41, and here recapitulate that circuit's reasoning. If the Army's resort to PSCs is unlawful, then the union's proposal is not simply bargainable, it is one to which the Army must say yes.

The Second Circuit's decision rests on a Federal Acquisition Regulation which provides:

> (a) ... [A] personal services contract is characterized by the employer-employee relationship it creates between the Government and the contractor's personnel. The Government is normally required to obtain its employees by direct hire under competitive appointment or other procedures required by the civil service laws. Obtaining personal services by contract, rather than by direct hire, circumvents those laws unless Congress has specifically authorized acquisition of the services by contract.
>
> (b) Agencies shall not award personal services contracts unless specifically authorized by statute (e.g., 5 U.S.C. § 3109) to do so.

48 C.F.R. § 37.104 (1987). The FLRA argues that this regulation applies only to employees protected by the civil service laws because section (a) suggests that the regulation's purpose is to prevent the circumvention of those laws.[6] Because section 6 teachers are exempt from many of the civil service laws under 20 U.S.C. § 241(a), the FLRA reasons, use of PSCs for those teachers does not violate the purpose of the regulation.[7] Brief for the FLRA at 17–18.

As the Second Circuit held, however, the language of section (b) of the regulation "is not limited to employees covered by the civil service regulations." *West Point*, 855 F.2d at 940. That court did not extract from the description in section (a) of how the government usually obtains its employees any implicit qualification of the unambiguous and unlimited directive in section (b). If section (b) controls, the FLRA's position falters unless the Authority points to some specific authorization for the Army's use of PSCs.

Recognizing the lack of specific authorization for PSCs in the text of 20 U.S.C. § 241(a), the FLRA draws on the legislative history of the 1965 amendments to that section, which made various civil service rules inapplicable to section 6 employees. Brief for the FLRA at 18–19. The Authority maintains that the amendments responded to the Army's request to allow section 6 schools to follow the personnel practices of local schools, which included the use of PSCs. *Id.* The Senate Report reprinted a letter from the Army:

> Employment practices and contract clauses have been established, therefore, to reflect the practices which exist in the

**6.** The union asserted the illegality of the PSCs under 48 C.F.R. § 37.104 (1987) in its petition to the FLRA. *See, e.g.,* J.A. at 4. The FLRA, however, failed to provide any reason for rejecting the union's argument in its *Fort Bragg* decision. *See* 30 F.L.R.A. at 511. In its *West Point* decision, the Authority stated merely that "on the record before us the Union has not demonstrated that the use of personal services contracts by the Agency is illegal." 29 F.L.R.A. at 1534. In reversing that decision, the Second Circuit stated that "[t]he FLRA's determination that it could not assess the legality of such contracts on the record before it is not 'the product of reasoned decisionmaking,' for no 'demonstration' is necessary to decide whether the Army's use of personal service contracts in the hiring of teachers is in accordance with law." *West Point Elementary School Teachers Ass'n v. FLRA*, 855 F.2d 936, 940 (2d Cir.1988) (citation omitted). Because the FLRA's explanation was thus entirely inadequate, the Authority did not satisfy its statutory duty to provide "specific reasons" for its negotiability decision. 5 U.S.C. § 7117(c)(6). Were there any doubt about the illegality of the Army's use of PSCs, the FLRA's failure to articulate its rationale would be sufficient grounds for reversal and remand. *See National Treasury Employees Union v. FLRA*, 802 F.2d 843, 845 (6th Cir.1986); *National Treasury Employees Union v. FLRA*, 701 F.2d 781, 784 (9th Cir.1983).

**7.** Significantly, the FLRA's interpretation of the Federal Acquisition Regulation is not entitled to deference because the regulation was not promulgated by the FLRA and is not within the Authority's area of expertise. *See Office of Personnel Management v. FLRA*, 864 F.2d 165, 171 (D.C.Cir.1988); *Department of Treasury v. FLRA*, 837 F.2d 1163, 1167 (D.C.Cir.1988); *see also West Point*, 855 F.2d at 940.

public schools.... [I]t is highly desirable that the personnel practices for instructional personnel be patterned after those usually encountered in the teaching profession rather than those which have been developed for the Federal service as a whole. The attached draft legislation would provide clear legislative authority considered necessary to permit continuation of present practices.

S.REP. No. 311, 89th Cong., 1st Sess. 4–5 (1965), U.S.Code Cong. & Admin.News 1965, pp. 1910, 1913.

This letter cannot bear the weight the FLRA would place on it. A letter incorporated in the Senate Report is, without more, hardly a reliable indicator of legislative intent. *See Bancorp Leasing & Financial Corp. v. Agusta Aviation Corp.,* 813 F.2d 272, 276 (9th Cir.1987). Even if it were a firmer reed, the legislative history featured by the FLRA scarcely satisfies the regulation's demand for "specific[] authoriz[ation] by statute." 48 C.F.R. § 37.104(b).[8] *Cf. Abourezk v. Reagan,* 785 F.2d 1043, 1055 n. 11 (D.C.Cir.1986) ("Committee reports, we remind, do not embody the law. Congress, as [then-]Judge Scalia recently noted, votes on the statutory words, not on different expressions packaged in committee reports.") (citing *Hirschey v. FERC,* 777 F.2d 1, 7–8 n. 1 (D.C. Cir.1985) (Scalia, J., concurring)), *aff'd by equally divided Court,* 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987).

In sum, we align ourselves with the Second Circuit's analysis in *West Point:* because 20 U.S.C. § 241(a) does not specifically authorize the Army's use of PSCs, that use violates the Federal Acquisition Regulation; the union's proposal therefore does not interfere with management's right to hire "in accordance with applicable laws."

CONCLUSION

The union's proposal to prohibit the Army's ·use of personal service contracts does not interfere substantively with the

Army's right to hire because those contracts are merely a means of recording the terms of employment. Furthermore, the Army's use of PSCs appears to us, as it did to the Second Circuit, to violate a Federal Acquisition Regulation; the Army therefore is not exercising its hiring authority "in accordance with applicable laws." For the reasons stated, we grant the union's petition for review and reverse the decision of the FLRA. We further direct the Authority to enter an appropriate bargaining order.

IT IS SO ORDERED.

---

**8.** In contrast, the statute cited by the regulation as an example of specific authorization provides:

When authorized by an appropriation or other statute, the head of any agency may procure by contract the temporary (not in excess of 1 year) or intermittent services of experts or consultants or an organization thereof, including stenographic reporting services.

5 U.S.C. § 3109(b) (1982).